STATE OF NORTH CAROLINA v. JOSE MANUEL SANCHEZ

No. 292A89

(Filed 7 February 1991)

**Criminal Law § 75.14 (NCI3d) — understanding of Miranda warnings — expert opinion testimony**

The trial court erred in refusing to permit a forensic clinical psychologist to state his opinion that defendant did not understand the *Miranda* warnings given by police before he allegedly waived his rights and confessed since this evidence was competent as going to the weight and credibility of defendant's confession. The fact that *Miranda* warnings were not

STATE v. SANCHEZ

[328 N.C. 247 (1991)]

required because of the trial court's determination that defend-
ant was not in custody or under arrest is irrelevant. N.C.G.S.
§ 8C-1, Rule 104(e).

**Am Jur 2d, Expert and Opinion Evidence §§ 176, 177,
190; Evidence §§ 791, 792.**

Justice MEYER dissenting.

Justice MITCHELL joins in this dissenting opinion.

APPEAL as of right pursuant to N.C.G.S. § 7A-27 from a judg-
ment of life imprisonment entered by *Lake, J.*, at the 10 April
1989 Session of Superior Court, DUPLIN County. Heard in the
Supreme Court on 12 December 1990.

*Lacy H. Thornburg, Attorney General, by James J. Coman,
Senior Deputy Attorney General, and William N. Farrell, Jr., Special
Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R.
Pollitt, Assistant Appellate Defender, for defendant-appellant.*

MARTIN, Justice.

Defendant was tried capitally and found guilty of murder in
the first degree upon the theory of premeditation and deliberation.
Failing to find any aggravating circumstances, the jury recommend-
ed a sentence of life imprisonment, from which defendant appeals.
Defendant contends, *inter alia*, that the trial court erred in ex-
cluding expert opinion evidence that the defendant did not under-
stand the warnings given by police pursuant to *Miranda v. Arizona*,
384 U.S. 436, 16 L. Ed. 2d 694 (1966), before he allegedly waived
his rights and confessed. We hold that this exclusion was prejudicial
error entitling defendant to a new trial. Therefore, it is not necessary
to discuss defendant's other assignments of error.

William McKay was shot and killed on the morning of May
23, 1988 at Lyman's Crossroads in Duplin County. Because we
remand for a new trial, a detailed discussion of the crime is not
necessary. However, a recitation of the facts surrounding defend-
ant's alleged confession will be instructive for the issue at hand.
Shortly after the murder, Duplin County officials requested that
the Florida Department of Law Enforcement aid their investigation
of suspects living in Florida. Agents learned that defendant, a

Spanish-speaking immigrant from Puerto Rico, had borrowed a car matching the description of one seen at Lyman's Crossroads around the time of the murder. Four agents, two from North Carolina and two from Florida, went to defendant's apartment and asked him to accompany them to their vehicle. The agents were casually dressed and carried concealed weapons, although one officer placed his gun in the back of his trousers. Because it was hot in the car, defendant agreed to go with the agents to the police station and was read his *Miranda* rights in Spanish. The agents told him that he did not have to go and could drive his own car, but he indicated that his car was not operative.

Agents testified at the suppression hearing that defendant seemed aware, did not appear intoxicated, and responded affirmatively to the waiver of rights. Defendant originally told the agents that he borrowed the car to go to Disney World, but decided to drive to New York to see his girlfriend, got as far as North Carolina, and then returned to Florida. Twenty to thirty minutes into the questioning, defendant began to talk about his involvement in the crime. Agents testified that defendant confessed and made drawings of the crime scene to aid his explanation. Defendant indicated that Tammy Thompson, a co-worker, had offered to pay him to kill McKay. At the agents' request, defendant called Thompson and elicited incriminating statements. After being transported to North Carolina, defendant recanted his confession. However, when an officer told defendant that he did not believe his new story, defendant confessed again. The trial court denied defendant's motion to suppress the confession after a hearing.

At trial, the defense called Dr. Brad Fisher, a forensic clinical psychologist who had examined the defendant. Dr. Fisher testified about defendant's limited intelligence and dependent personality traits. However, the trial court prohibited Fisher from stating his opinion about the defendant's understanding of the *Miranda* warnings. On voir dire, Dr. Fisher testified as follows:

> Q: And, Dr. Fisher, based upon your knowledge, skill, experience, training, education and your clinical evaluation in this case, do you have an opinion as to whether Jose Pepe Sanchez understood his Constitutional rights, commonly referred to as Miranda Rights, including the right to remain silent and the right to an attorney as read to him on May 26, 1988 and

on June 3, 1988 and also on June 6, 1988 so that he could voluntarily, knowingly and intelligently waive these rights?

A: Yes.

Q: What is your opinion?

A: My opinion is that he did not. This is based on the specific questions I have spoken to earlier in my own testimony the first time [at the suppression hearing]. For example, that he didn't know what it meant to have a right to. He did not know what an attorney was. There are, there are a set of questions you give as a test for the extent to which you understand Miranda. I gave that and I found limits to the extent that I thought that he was not able to fully comprehend the Miranda Rights.

The State argues that this testimony was properly excluded as an attempt to relitigate the admissibility of the confession. Assuming, *arguendo*, that the confession was admissible, we hold that the court erred by preventing Dr. Fisher from testifying concerning the surrounding circumstances.

Under Rule 104(e) of the North Carolina Rules of Evidence, the preliminary determination of admissibility of evidence by the trial court "does not limit the right of a party to introduce before the jury evidence relevant to weight or credibility." N.C.G.S. § 8C-1, Rule 104(e) (1988); *cf. State v. Walker*, 266 N.C. 269, 145 S.E.2d 833 (1966) (error for trial judge to make finding of fact that confession was voluntary in the presence of the jury). Dean Brandis wrote,

> [o]nce disputed evidence is admitted at the trial, its weight and credibility are for the jury. Therefore, if otherwise competent, to the extent that it bears upon such weight or credibility, the same testimony which failed to convince the judge to grant the motion to suppress is admissible before the jury.

1 Brandis on North Carolina Evidence § 19a (3d ed. 1988) (footnotes omitted). In *Walker* this Court stated the general rule:

> If the judge determines the proffered testimony is admissible, the jury is recalled, the objection to the admission of the testimony is overruled, and the testimony is received in evidence for consideration by the jury. If admitted in evidence, it is for the jury to determine whether the statements referred

to in the testimony of the witness were in fact made by the defendant and the weight, if any, to be given such statements if made. Hence, evidence as to the circumstances under which the statements attributed to defendant were made may be offered or elicited on cross-examination in the presence of the jury. *Admissibility is for determination by the judge unassisted by the jury. Credibility and weight are for determination by the jury unassisted by the judge.*

266 N.C. at 273, 145 S.E.2d at 836 (emphasis added); *accord State v. Moore,* 321 N.C. 327, 339, 364 S.E.2d 648, 654 (1988).

The State argues that the opinion testimony was inadmissible as a conclusion that a legal standard had not been met, in violation of *State v. Rose,* 323 N.C. 455, 373 S.E.2d 426 (1988). That argument has merit as to the part of the question concerning whether defendant could voluntarily, knowingly, and intelligently waive his *Miranda* rights. This, of course, did involve a legal standard and if the witness had replied to this part of the question, it would have been properly excluded. However, he confined his answer to defendant's understanding of his *Miranda* rights and gave certain specific examples such as defendant's ability to understand "right" and "attorney." Therefore, the part of the question dealing with voluntariness is not at issue on this appeal. The testimony at issue involved an opinion as to defendant's mental ability to understand the questions to him during his interrogation and therefore was competent as going to the weight and credit the jury should give to his confession.

The fact that the *Miranda* warnings were not required because of the trial court's determination that defendant was not in custody or under arrest is irrelevant. Assuming, *arguendo,* that the warnings were not required, the fact that they were given and allegedly waived by defendant is relevant to the jury's determination of weight and credibility, as is the mental condition of the defendant in making the confession. The State introduced evidence of the *Miranda* warnings to emphasize the confession's weight and credibility. If the jury believed that the defendant knew the full consequences of making the statements, they might be more likely to assign such statements greater weight.

The prohibited testimony related to the defendant's mental ability to understand the *Miranda* warnings. Testimony of this type is clearly admissible as evidence of the surrounding circum-

stances under which the statements were made. *State v. Walker*, 266 N.C. at 269, 145 S.E.2d at 833. In order for a jury to adequately evaluate the credibility and weight of confessions, they must hear all the competent evidence of the surrounding circumstances. Here, the court did not give the jury the opportunity to consider all the evidence. We hold that the exclusion of the evidence concerning defendant's understanding of the *Miranda* warnings was error. Moreover, we conclude as a matter of law that there was "a reasonable possibility that, had the error . . . not been committed, a different result would have been reached at the trial." N.C.G.S. § 15A-1443(a) (1988).

New trial.

Justice MEYER dissenting.

I cannot agree with the majority that the trial court erred in refusing to allow Dr. Brad Fisher, a forensic clinical psychologist, to state his opinion as to whether the defendant understood the *Miranda* warnings given to him so as to voluntarily, knowingly, and intelligently waive those rights.

On voir dire, Dr. Fisher testified as follows (I have emphasized the essence of the question asked and the answer given in response thereto):

Q: And, *Dr. Fisher*, based upon your knowledge, skill, experience, training, education and your clinical evaluation in this case, *do you have an opinion as to whether Jose Pepe Sanchez understood his Constitutional rights*, commonly referred to as Miranda Rights, including the right to remain silent and the right to an attorney as read to him on May 26, 1988 and on June 3, 1988 and also on June 6, 1988 *so that he could voluntarily, knowingly and intelligently waive these rights?*

A: Yes.

Q: What is your opinion?

A: *My opinion is that he did not.* This is based on the specific questions I have spoken to earlier in my own testimony the first time [at the suppression hearing]. For example, that he didn't know what it meant to have a right to. He did not know what an attorney was. There are, there are a set of

questions you give as a test for the extent to which you understand Miranda. I gave that and I found limits to the extent that I thought that *he was not able to fully comprehend the Miranda Rights*.

(Emphasis added.)

The State argued that the opinion testimony was inadmissible as a conclusion that a legal standard had not been met, in violation of *State v. Rose*, 323 N.C. 455, 373 S.E.2d 426 (1988). The majority candidly admits: "That argument has merit as to the part of the question concerning whether defendant could voluntarily, knowingly, and intelligently waive his *Miranda* rights. This, of course, did involve a legal standard and if the witness had replied to this part of the question, it would have been properly excluded." The majority concludes, however, that Dr. Fisher "confined his answer to defendant's understanding of his *Miranda* rights and gave certain specific examples such as defendant's ability to understand 'right' and 'attorney,'" and thus "the part of the question dealing with voluntariness is not at issue on this appeal." I cannot agree.

As I have pointed out, the essence of the question asked was: "Dr. Fisher, . . . do you have an opinion as to whether Jose Pepe Sanchez understood his Constitutional rights, . . . so that he could voluntarily, knowingly and intelligently waive these rights?" Dr. Fisher's answer was: "My opinion is that he did not." Everything thereafter in his response was, as the majority characterizes it, merely "examples" to fortify his belief that defendant did not voluntarily, knowingly, and intelligently waive his rights. The majority clearly errs when it says Dr. Fisher confined his answer to defendant's understanding of his *Miranda* rights. The majority further errs in concluding that "the part of the question dealing with voluntariness is not at issue on this appeal."

Dr. Fisher's answer was that, in his opinion, defendant did not understand his constitutional rights *so as to voluntarily, knowingly, and intelligently waive those rights*. This addressed the ultimate legal standard and was properly excluded.

Justice MITCHELL joins in this dissenting opinion.