STATE OF NORTH CAROLINA v. PATRICK HESTER

No. 362A91

(Filed 10 January 1992)

**1. Evidence and Witnesses § 1246 (NCI4th)— murder—confession—16 year old defendant—failure to contact parent or guardian**

There was no prejudicial error in a murder prosecution where the trial court precluded inquiry into why the police failed to contact defendant's parent or guardian prior to the interrogation of the sixteen year old defendant. The police fully complied with N.C.G.S. § 7A-595(a), which requires that juveniles in custody be advised of their right to have a parent

STATE v. HESTER

[330 N.C. 547 (1992)]

or guardian present during questioning, and the failure of the trial court to admit this testimony was clearly harmless.

**Am Jur 2d, Evidence § 574.**

**Voluntariness and admissibility of minor's confession. 87 ALR2d 624.**

2. **Evidence and Witnesses § 2516 (NCI4th)— murder— interrogation notes—one officer testifying as to another's perceptions—not admissible**

The trial court did not err in a murder prosecution by sustaining the State's objections to a series of questions by defense counsel as to why the witness's interrogation notes differed from those of another officer. The witness was not competent to state why the other officer perceived what he did. Furthermore, defendant was allowed to fully explore other discrepancies between the accounts of the two officers. N.C.G.S. § 8C-1, Rule 602.

**Am Jur 2d, Evidence § 596.**

3. **Evidence and Witnesses § 1208 (NCI4th)— murder—confession—admissible—surrounding circumstances—also admissible**

The trial court erred in a murder prosecution by sustaining the State's objections to the questions asked of an officer regarding police department policy as to the taking of suspects' statements and his own experience with written, signed, sound-recorded, and videotaped statements. While admissibility is for determination by the judge unassisted by the jury, credibility and weight are for determination by the jury unassisted by the judge. Defense counsel's questions were legitimate and were directed toward eliciting evidence relevant to the credibility and weight of defendant's alleged statement. Moreover, there was a reasonable possibility that a different result would have been reached had the error not been committed. N.C.G.S. § 8C-1, Rule 104(e); N.C.G.S. § 15A-1443(a).

**Am Jur 2d, Evidence §§ 526, 532, 534.**

4. **Evidence and Witnesses § 694 (NCI4th)— evidence excluded— no offer of proof—obvious significance**

The fact that defendant did not make an offer of proof was not determinative where the witness was pointedly asked about his own and the department's policies and practices

regarding the taking of statements and the jury would have been provided with a valuable basis on which to evaluate the trustworthiness of defendant's alleged statement. The significance of the witness's answers is obvious from the record.

**Am Jur 2d, Trial §§ 440, 441, 443, 446, 447.**

Justice MITCHELL dissenting.

Justice WEBB joins in this dissenting opinion.

APPEAL as of right by the defendant, pursuant to N.C.G.S. § 7A-27(a), from a judgment imposing a sentence of life imprisonment for first-degree murder, entered by *Hight, J.,* at the 23 April 1990 Criminal Session of Superior Court, VANCE County. Heard in the Supreme Court 11 December 1991.

*Lacy H. Thornburg, Attorney General, by Jane R. Garvey, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

On 2 January 1990, the grand jury of Vance County indicted defendant for first-degree murder. The case was tried noncapitally at the 23 April 1990 Criminal Session of the Superior Court, Vance County. The jury found the defendant guilty, and he was sentenced to a term of life imprisonment.

At trial, the evidence tended to show the following. On 10 December 1989, at approximately 8:15 p.m., Henderson police responded to a call at a Fast Fare convenience store in Henderson. The call originated with Edwin Bowen, Jr., who upon finding the front door of the store locked, looked inside and saw a great deal of blood and signs of a struggle. Mr. Bowen testified that after notifying the police he continued to observe the interior of the store, where he saw a young black individual moving about inside the rear office. Upon their arrival, the police discovered that the store's front door was locked and observed a large quantity of blood on the floor. Shortly thereafter, a white female covered in blood and naked from the waist down emerged from the rear office and unsuccessfully struggled toward the front door. The officers kicked in the door to gain entrance. The victim, later identified

as Lynn Stainback, died en route to the hospital. The autopsy revealed four stab wounds: one to the chest, one to the abdomen, and two to the back. All of the wounds were consistent with a dagger-type hunting knife found lying on the floor of the store. The chest wound was determined to be the cause of death. No evidence of rape was detected.

Defendant, a sixteen-year-old black youth, became a suspect on 11 December 1989. On that day, defendant was taken to the Henderson police station and subjected to noncustodial interrogation. Defendant allegedly made an oral inculpatory statement in the presence of law enforcement authorities that afternoon. This alleged statement of 11 December was the subject of a motion to suppress prior to trial, and a voir dire was conducted in the absence of the jury. At voir dire, Henderson policeman Robinson testified that he and State Bureau of Investigation Agent Sims informed defendant that he was a suspect in the killing, relating that several witnesses placed him at the store minutes before the murder occurred, and, using a juvenile interrogation sheet, advised defendant of his *Miranda* rights. Robinson testified that defendant said that he understood his rights and that defendant wanted Agent Sims to leave the room so that defendant could speak with Robinson alone. Sims left the room and defendant thereafter confessed to the murder. Robinson further testified that he then told defendant to stop talking, that he inquired whether defendant wanted his parents or others present, that defendant replied "no," and that the interrogation continued after Agent Sims rejoined them. Robinson did not ask defendant to sign a written statement and did not tape-record the interrogation. Agent Sims testified to a similar factual scenario.

Defendant testified on voir dire that he and his friend, Troy Person, were taken to the police station on 11 December. Upon arrival, Person requested to be present during the interrogation of defendant but Robinson refused. Robinson commenced the interrogation by telling defendant that someone saw him kill Stainback and asking defendant when he would admit his guilt. Sims then left the room on his own initiative, and Robinson continued to assert that defendant killed Stainback and urge defendant to confess. Defendant responded that he was not involved. Robinson read defendant his *Miranda* rights, and defendant signed a waiver form. Robinson then asked a series of questions to which defendant did not respond. Person again asked to be present and Robinson again

refused. Defendant specifically denied making the inculpatory statement that Robinson testified defendant had made.

Troy Person testified on voir dire that he was sitting outside the interrogation room and that he could hear the discussions because the door was ajar. According to Person, Robinson kept telling defendant that "you know you killed her" and that defendant kept responding that he "didn't kill her." After the interrogation, defendant told Person and others that he "ain't admitted nothing."

At the conclusion of the voir dire, the trial court ruled that the alleged statement was admissible. When before the jury, Robinson provided similar testimony, adding that defendant steadfastly denied any involvement in the crime at the outset of the interrogation. On direct examination, Robinson was asked by defense counsel about the circumstances surrounding the interrogation. Defense counsel first asked why defendant's parent or guardian was not notified of the imminent interrogation. The trial court sustained the State's objection, and Robinson testified on an offer of proof that he proceeded to the Police Department without making any such contact. Defense counsel also asked Robinson why his written notes of the interrogation varied from Officer Sims' written notes of the same interrogation, and the court sustained the State's objection. When Robinson related that it was department policy "[m]ost of the time" not to have defendants sign statements, defense counsel asked what cases do not "fall into 'most of the time.'" The trial court sustained the State's objection. Defense counsel then asked Robinson whether a defendant had ever signed a confession in one of his cases, and the court sustained the State's objection. In response to an inquiry by defense counsel, Robinson stated that he "seldom" sound-recorded interrogations. Defense counsel further inquired whether that was department policy, and the court again sustained the State's objection. Finally, counsel asked Robinson whether he had ever videotaped an interrogation, and the court sustained the State's objection.

The central question before this Court is whether the trial court acted properly in sustaining the State's objections to the various questions asked of Officer Robinson regarding the circumstances surrounding the alleged statement of defendant.

[1] Defendant first claims that the court erroneously precluded defense counsel inquiry into why the police failed to contact defendant's parent or guardian prior to the interrogation of the defendant,

a sixteen-year-old. We find no merit in this claim. The record shows that during defendant's offer of proof on voir dire, Robinson testified that he specifically asked the defendant whether he wanted to have a parent, guardian, or custodian present during questioning. Defendant responded that he did not wish that a parent, guardian, or other person be present. On this basis, we conclude that the police fully complied with N.C.G.S. § 7A-595(a) (requiring that juveniles in custody must be advised of their right to have a parent or guardian present during questioning) and that the failure of the trial court to admit such testimony, even if error, was clearly harmless.

[2] Defendant also contends that the trial court erred when it sustained the State's objections to a series of questions by defense counsel as to why Officer Robinson's notes of the interrogation of the defendant differed from those of Agent Sims. The trial court first sustained the State's objection to defense counsel's question of Officer Robinson regarding why the respective "perceptions" differed insofar as Robinson believed that defendant appeared to speak in normal tones, while Sims testified that defendant appeared nervous. We conclude that the trial court acted properly in excluding Robinson's response as Robinson was not competent to state why Sims perceived what he did. N.C.G.S. § 8C-1, Rule 602 (1988). Therefore, this claim is without merit.

Further, defendant was allowed to fully explore other discrepancies between the accounts of Sims and Robinson. Defense counsel asked Robinson why his notes differed from those of Sims regarding whether defendant denied having been at the Fast Fare and riding a ten-speed bicycle on the evening of the killing. The court sustained the State's objection to this inquiry. A review of the record, however, reveals that the court's ruling, even if error, was harmless. Robinson testified that "for some reason" he had omitted these facts from his notes but that in fact defendant had denied both that he had been at the Fast Fare and that he had been riding a ten-speed bicycle on the evening of the killing. Robinson further testified that with the exception of such omissions, "in general it's the same report; same information." Therefore, any possible error by the trial court was cured by Robinson's testimony on the matter.

[3] Defendant also contends that the trial court erred when it sustained the State's objections to the questions asked of Officer

**STATE v. HESTER**

[330 N.C. 547 (1992)]

Robinson regarding police department policy as to the taking of suspects' statements and his own experience with written, signed, sound-recorded, and videotaped statements. We agree that the court erred in excluding this testimony for the following reasons.

As a threshold matter, it is beyond dispute that the trial court was empowered to make the preliminary determination regarding the admissibility of defendant's alleged statement.[1] However, in the wake of this determination, defendant retained the right "to introduce before the jury evidence relevant to [the statement's] weight or credibility." N.C.G.S. § 8C-1, Rule 104(e) (1988). "Admissibility is for determination by the judge unassisted by the jury. Credibility and weight are for determination by the jury unassisted by the judge." *State v. Walker*, 266 N.C. 269, 273, 145 S.E.2d 833, 836 (1966).

A similar question was before this Court in *State v. Sanchez*, 328 N.C. 247, 400 S.E.2d 421 (1991). There, defendant called to the stand a forensic clinical psychologist who testified about defendant's limited intelligence and dependent personality traits. The trial court, however, prohibited the expert from stating his opinion regarding defendant's understanding of the *Miranda* warnings he was given prior to providing police with a confession. We concluded that the trial court erred in excluding the testimony as it concerned defendant's mental condition and hence the weight and credit the jury should lend his confession. "Testimony of this type is clearly admissible as evidence of the surrounding circumstances under which the statements were made. In order for a jury to adequately evaluate the credibility and weight of confessions, [it] must hear all the competent evidence of the surrounding circumstances." *Id.* at 251-52, 400 S.E.2d at 424 (citation omitted).

We find the reasoning in *Sanchez*, and its construction of N.C.G.S. § 8C-1, Rule 104(e), controlling in the instant case. Defense counsel's questions to Officer Robinson regarding policy and practice as to the taking of statements were legitimate and were directed toward eliciting evidence relevant to the credibility and weight of defendant's alleged statement. The questions went to the vital issues of the manner in which Robinson obtained the alleged state-

---

1. Defendant did not argue at trial or in his briefs or arguments before this Court that error occurred pursuant to Rule 104(b), and we do not address that question here. N.C.G.S. § 15A-1446(b) (1988).

ment and the circumstances attending the making of the statement. At trial, the State introduced evidence intended to convince the jury of the two officers' credibility. Defendant, on the other hand, contended that he never made the statement and tried unsuccessfully to elicit evidence as to why the alleged statement was never signed, sound-recorded, or videotaped in order to discredit the State's position. Department policy and Robinson's past practices and policies regarding taking signed statements and recording interrogations were relevant to the crucial issue of whether defendant did in fact make a statement. If defendant could have shown that Robinson employed signed or recorded statements in the past, defendant potentially could have highlighted Robinson's failure to do so here. On the other hand, if defendant could have shown that Robinson never obtained signed or recorded statements, defendant possibly could have pointed to poor police practices by Robinson as to such vital matters. Under either scenario, the testimony was potentially material to the jury's determination. In short, the testimony excluded by the trial court concerned important "surrounding circumstances" critical to the jury's determination.

Moreover, we conclude as a matter of law that there was "a reasonable possibility that, had the error . . . not been committed, a different result would have been reached at the trial." N.C.G.S. § 15A-1443(a) (1988). The evidence presented at trial as to defendant's guilt was far from conclusive. There were no eyewitnesses to defendant's alleged involvement in the killing. The practices of the police themselves subsequent to their arrival at the murder scene raise questions. No officers watched the rear of the store for at least twenty minutes after the police arrived, and the police did not know whether anyone left by the store's rear door after their arrival. Nor, for that matter, were hair and fiber samples from the victim's lower body clothes analyzed, or scrapings taken for analysis from the victim's fingernails.

Further, the forensic tests actually conducted by law enforcement officials were inconclusive. The bicycle defendant allegedly rode the night of the killing was found not to have any blood on it, and while the soles of defendant's tennis shoes were consistent with many imprints found in the store, no blood was detected on the shoes. "Chemical indications" of blood were discovered on defendant's shoelaces, but no typing analysis was done on the substance. Defendant's latent fingerprint was detected on the front door lock of the store in a blood-like substance, but tests were

inconclusive as to whether the substance was in fact blood. Finally, no prints of defendant were discovered on the alleged murder weapon, the knife, and no other fingerprints or palmprints in the store belonged to defendant.

Given the inconclusiveness of the evidence, the alleged statement made by defendant on 11 December assumed central importance to the State's case. We therefore are unable to say that prejudice did not occur as a result of the trial court's erroneous ruling.

**[4]** Finally, we do not deem it fatal that defense counsel failed to make offers of proof at trial as to what Officer Robinson would have said regarding what department policy was with respect to the various procedures and his own experiences with inculpatory statements. Ordinarily, where the evidence is excluded, the record must show " 'the essential content or substance of the witness's testimony' " before we can determine whether the exclusion prejudiced defendant. *State v. Satterfield*, 300 N.C. 621, 628, 268 S.E.2d 510, 515-16 (1980) (quoting *Currence v. Hardin*, 296 N.C. 95, 100, 249 S.E.2d 387, 390 (1978) ). "[I]n order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record." *State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985); *see also* N.C.G.S. § 8C-1, Rule 103(a)(2) (1988); N.C.G.S. § 15A-1446(a) (1988).

While defense counsel made no offers of proof, we believe the "essential content" of the excluded testimony and its significance are obvious. Officer Robinson was pointedly asked about his own and the department's policies and practices regarding the taking of statements. His responses would have addressed these important circumstances attending the interrogation, and their significance "is obvious from the record." As discussed above, information related to the policies and practices was critical to the jury's decision-making. Whatever Robinson's answers, the jury would have been provided with a valuable basis on which to evaluate the trustworthiness of defendant's alleged statement. The issues of credibility surrounding the alleged statement were central to the jury's weighing of the significance of the statement. Under the particular facts of this case, the fact that defense counsel failed to make offers of proof is not determinative.

STATE v. HESTER

[330 N.C. 547 (1992)]

Because we grant defendant a new trial upon our determination that the trial court improperly excluded Officer Robinson's responses to questions by defense counsel, we do not address defendant's other assignments of error. The judgment entered by the Superior Court, Vance County, adjudging defendant guilty of first-degree murder and imposing a sentence of life imprisonment is hereby vacated and this case is remanded to that court for a new trial.

New trial.

Justice MITCHELL dissenting.

The majority concludes that the trial court committed reversible error by sustaining the State's objections to certain questions the defendant asked of Lieutenant R. T. Robinson concerning the circumstances leading up to and surrounding the defendant's confession. Some of the questions had already been answered or were answered at subsequent points in the examination of Robinson by the defendant. Assuming the trial court erred in sustaining the objections to other questions, such errors were harmless.

The majority concludes error was committed when, after Robinson had testified that it was department policy "most of the time" not to have defendants sign statements, the trial court sustained an objection to the defendant's question as to what cases did not "fall into 'most of the time.'" The transcript of the trial reveals, however, that at several points the defendant had already made full inquiry and received full answers from Robinson concerning this matter. Robinson had fully testified that it was not a procedure or policy of his department to have defendants who made statements give written statements and sign them, but that it was departmental policy to have at least two people present when a defendant made a statement. That policy was followed in this case. Robinson testified further that: "When we do require a statement to be signed is when there is a co-defendant. When the defendant is going to testify against another person in court, we do require him to sign a statement." The question as to which the trial court sustained the objection had already been asked and answered, and the trial court did not err by sustaining the objection to the repetitious question.

I agree with the majority that the trial court erred in sustaining objections to the defendant's questions concerning departmental policy with regard to the making of sound-recordings or videotapes of interrogations of suspects. However, Robinson was permitted to testify that his department "very seldom" made sound-recordings of such interrogations. In my view, the trial court's action in sustaining objections to questions concerning departmental policy with regard to the making of sound-recordings and videotapes of interrogations was harmless. The testimony of Lieutenant Robinson before the jury clearly indicated that no such steps were taken in this case, and the defendant had full advantage of any inferences adverse to the State which could be drawn from that fact. Therefore, there is no reasonable possibility that the trial court's rulings in this one narrow area of inquiry affected the result at trial, and any error in this regard was harmless. N.C.G.S. § 15A-1443(a) (1988).

Finally, the majority errs to the extent it rests its holding in this case upon the authority of *State v. Sanchez*, 328 N.C. 247, 400 S.E.2d 421 (1991). As the majority's own analysis of *Sanchez* clearly demonstrates, that case is only remotely similar to the present case and certainly is not controlling here.

I dissent from the decision of the majority which awards this defendant a new trial.

Justice WEBB joins in this dissenting opinion.