STATE OF NORTH CAROLINA v. GREGORY STEWART LYNCH

No. 48A93

(Filed 29 July 1994)

**1. Evidence and Witnesses § 293 (NCI4th)— first-degree murder—testimony of prior breaking or entering charge—no probable cause finding—admissible**

The trial court did not err in a first-degree murder prosecution by admitting testimony by the victim's twelve year old son that he had awakened at 5:00 a.m. on a morning prior to the day of the murder when he heard an intruder in the house, he had recognized defendant as the intruder, had climbed out a window and gone to the home of a neighbor, who called the police, and defendant had been charged with felonious breaking or entering, but a district court judge found no probable cause. Defendant has not been acquitted of the crime for which he was previously

charged, the State may proceed against him on that charge, and he is not entitled to the protection provided by *State v. Scott*, 331 N.C. 39.

Am Jur 2d, Evidence § 410.

**Admissibility of evidence as to other offense as affected by defendant's acquittal of that offense. 25 ALR4th 934.**

2. **Evidence and Witnesses § 3003 (NCI4th)— first-degree murder—prior conviction ten years and one month old—admissible**

The trial court did not err in a first-degree murder prosecution by admitting evidence that defendant had been convicted of aggravated robbery in Colorado on 14 June 1974 where defendant was released from prison and parole on 19 July 1982 and this trial began on 17 August 1992, approximately ten years and one month after defendant was released from prison. Although N.C.G.S. § 8C-1, Rule 609(b) provides that a witness cannot be questioned on cross-examination about a previous conviction if more than ten years has elapsed since the date of the conviction or the date of release from confinement unless the court determines in the interests of justice that the probative value of the conviction substantially outweighs its prejudicial effect, the court focused on the importance of the evidence in attacking the credibility of the defendant, balanced this importance against the danger of prejudice to the defendant, and extended the time for the admission of the evidence for only a short period.

Am Jur 2d, Witnesses § 577.

**Right to impeach credibility of accused by showing prior conviction, as affected by remoteness in time of prior offense. 67 ALR3d 824.**

**Construction and application of Rule 609(b) of Federal Rules of Evidence, setting time limit on admissibility of evidence of conviction of crime to attack credibility of witness. 43 ALR Fed. 398.**

3. **Evidence and Witnesses § 2993 (NCI4th)— first-degree murder—impeachment of State's witness—prior p.j.c.—excluded**

The trial court did not err in a first-degree murder prosecution by denying defendant the use of an assault conviction to

impeach a State's witness where defendant's attorney asked the witness if he had been convicted of assault, the witness answered that he had not been convicted but had been found not guilty, and defendant's attorney attempted to introduce a court record which did not show a verdict but said "PJ cont and costs remitted" and "[h]ave no contact with each other." Under N.C.G.S. § 15A-101(4a), prayer for judgment continued upon payment of costs, without more, does not constitute the entry of judgment. The phrase "[h]ave no contact with each other" is ambiguous; there was nothing "more" on the record to keep the statute from applying.

**Am Jur 2d, Witnesses § 570.**

**4. Evidence and Witnesses § 694 (NCI4th)— first-degree murder—cross-examination of deputy—nothing to show what answer would have been**

There was no error in a first-degree murder prosecution where defendant twice attempted to ask a deputy on cross-examination whether the initial report in a domestic investigation is sometimes not true, objections were sustained, and defendant then asked if that was because people are nervous and upset and afraid, sometimes because they are not telling the truth, to which the deputy answered "It's possible." Although defendant argues that it is apparent what the answers to the first questions would have been, there is nothing in the record to show what the response would have been and it is by no means apparent that the witness would have answered as defendant desired. The answer to the third question was equivocal and defendant was not prejudiced by its exclusion.

**Am Jur 2d, Appeal and Error § 604, Trial §§ 129, 130.**

**5. Evidence and Witnesses § 173 (NCI4th)— first-degree murder—testimony by victim's twelve-year-old son—fear when defendant entered house on prior occasion**

The court did not err in a first-degree murder prosecution by admitting testimony from the victim's twelve-year-old son that his state of mind when the defendant entered the house on a prior occasion was "fear." Although the jury had probably concluded on its own that the witness was in fear when he fled the house, the testimony was relevant to prove matters other than the character of the defendant in that it was relevant to rebut defendant's

contention that he was in the house with the consent of the victim, the testimony served to corroborate testimony indicating that defendant had threatened the victim, and it demonstrated the state of the familial relationship in the period immediately preceding the murder.

**Am Jur 2d, Evidence §§ 556 et seq.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Saunders, J., at the 17 August 1992 Criminal Session of Superior Court, Rutherford County, upon a jury verdict of guilty of first degree murder. Heard in the Supreme Court 12 April 1994.

This is the second time this case has been in this Court. In *State v. Lynch*, 327 N.C. 210, 393 S.E.2d 811 (1990), we granted the defendant a new trial after he had received a death sentence upon his conviction of first degree murder.

At the second trial of this case, there was evidence in the form of testimony from several witnesses that the defendant stabbed his estranged wife to death in the parking lot of Spindale Mills on 21 June 1986. He was convicted of first degree murder. Pursuant to a recommendation by the jury, the defendant was sentenced to life in prison.

The defendant appealed.

*Michael F. Easley, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

WEBB, Justice.

[1] The defendant first assigns error to the admission of testimony by the victim's twelve year old son that on 19 May 1986, at 5:00 a.m., he was in his mother's house when he heard someone in the house. He recognized the defendant as the intruder. He climbed out a window and went to the home of a neighbor who called the police. As a result of that incident, the defendant was charged with felonious breaking or entering, but a district court judge found no probable cause.

The defendant says it was prejudicial error to admit testimony of this incident. In our first opinion in this case, we said, "[w]hen a hus-

band is charged with murdering his wife, the State may introduce evidence covering the entire period of his married life to show malice, intent and ill will toward the victim." *Lynch*, 327 N.C. 210, 219, 393 S.E.2d 811, 816 (quoting *State v. Braswell*, 312 N.C. 553, 561, 324 S.E.2d 241, 247 (1985)). We held that the testimony by the victim's son was admissible as "some evidence of defendant's malice, intent and ill will toward his victim[.]" *Lynch*, 327 N.C. 210, 220, 393 S.E.2d 811, 816.

The defendant nevertheless, relying on *State v. Scott*, 331 N.C. 39, 413 S.E.2d 787 (1992), contends this testimony should have been excluded. In *Scott*, we held that the State may not introduce in a criminal trial evidence of a prior offense for which a defendant has been acquitted. We based this holding on the proposition that the presumption of innocence continues with the defendant after his acquittal and so erodes the probative value of the evidence of the previous crime that it is more prejudicial than probative, making it inadmissible under N.C.G.S. § 8C-1, Rule 403.

*Scott* is distinguishable from this case. Its rationale is based on the defendant's acquittal of a prior crime. The defendant in this case has not been acquitted of the crime for which he was previously charged. No probable cause was found by a district court. N.C.G.S. § 15A-612 provides:

**Disposition of charge on probable-cause hearing**.

. . . .

(b) No finding made by a judge under this section precludes the State from instituting a subsequent prosecution for the same offense.

The State may proceed against the defendant on the previous charge and he is not entitled to the protection provided by *Scott*. This assignment of error is overruled.

**[2]** The defendant next assigns error to the admission of evidence that he had been convicted of aggravated robbery in Colorado. The defendant was convicted of this charge on 14 June 1974. He was released from prison and parole on 19 July 1982. The trial of this case commenced on 17 August 1992, approximately ten years and one month after the defendant was released from prison. The defendant contends it was in violation of N.C.G.S. § 8C-1, Rule 609(b) to allow this testimony.

N.C.G.S. § 8C-1, Rule 609(b) provides that a witness cannot be questioned on cross-examination about a previous conviction if a period of more than ten years has elapsed since the date of the conviction or of the date of release from confinement imposed for the conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction substantially outweighs its prejudicial effect. We have said that Rule 609(b) "rests upon a rebuttable presumption that prior convictions more than ten years old tend to be more prejudicial to a defendant's defense than probative of his general character for truthfulness[.]" *State v. Ross,* 329 N.C. 108, 119, 405 S.E.2d 158, 164 (1991) (quoting *State v. Artis,* 325 N.C. 278, 307, 384 S.E.2d 470, 486 (1989), *vacated and remanded on other grounds,* 494 U.S. 1023, 108 L. Ed. 2d 604 (1990)).

The State gave the defendant written notice pursuant to Rule 609 that it would question him on cross-examination in regard to the Colorado conviction. The defendant made a motion *in limine* to exclude questioning in regard to this conviction and the court conducted a hearing on this motion. At the conclusion of the hearing, the court found "that the ten-year period contemplated by 609(b) began to run on or about July 17, 1982 and had not expired on the date of the indictment, July 21, 1986, and therefore its use is not barred by 609(b)."

The court then assumed that the ten year period of Rule 609(b) ran until the date of the trial and found facts based on this assumption. It found that it had been represented to the court that one defense would be diminished capacity. Another defense would be voluntary intoxication with both these defenses used to negate premeditation and deliberation. The court found further in regard to these defenses that the defendant's statements to mental health experts and the jury would be difficult to rebut because they would originate with the defendant. It was important to the State to be able to impeach the defendant's credibility. Robbery is a crime of dishonesty because it involves taking someone's property. Evidence of a conviction for robbery is a factor in determining credibility. The court allowed the admission of the testimony based on these findings.

The State does not contend that the running of the ten year period of Rule 609(b) was tolled from the date the defendant was indicted in this case. We must determine whether the court made sufficient findings to support the admission into evidence of the Colorado convictions.

**STATE v. LYNCH**

[337 N.C. 415 (1994)]

The defendant contends that the court failed to make adequate findings of fact and to engage in the delicate balancing process required by Rule 609(b). He says the evidence of the robbery had little probative value for impeachment but was extremely prejudicial to him.

In determining whether the evidence was admissible, the court focused, as directed by Rule 609(b), on the importance of the evidence in attacking the credibility of the defendant and balanced this importance against the danger of prejudice to the defendant in admitting this evidence. We hold that on the facts of this case, the court did not commit error. The evidence would have been admissible only one month earlier if it had been offered at that time. The court extended the time for the admission of this evidence for only a short period. The defendant had testified he had killed his wife, but he did not mean to do it. The prejudicial effect of evidence of a crime of violence such as armed robbery should not have been as great in this case in which the defendant admitted to a violent attack upon the victim. The defense that he did not know what he was doing depended on the defendant's credibility and increased the importance of the State's evidence on credibility. Rule 609(b) tolls the application of the ten year rule while the defendant is in prison for the conviction. We can conclude from this that the General Assembly felt that evidence of a prior conviction does not become less reliable while the witness is in prison. Although the time the defendant has been incarcerated on the charge in this case is not covered by Rule 609(b), it is a period which the General Assembly has determined does not make the evidence of the conviction less reliable.

It was not error to admit this evidence. This assignment of error is overruled.

[3] The defendant next assigns error to the refusal of the court to let him impeach a witness with a record of the witness' conviction for assault. The victim's brother testified for the State. On cross-examination, the defendant's attorney asked him if he had been convicted of assaulting Mary Ellen Miller. The witness answered that he had not been convicted, but had been found not guilty on this charge. The defendant's attorney then attempted to impeach the witness by introducing a court record which showed the witness was charged with assaulting Mary Ellen Miller. The court document showed he pled not guilty. There was not a verdict shown on the document but it said "PJ cont and costs remitted." It also said, "[h]ave no contact with

each other." The court held that the court record did not show a verdict had been entered and would not allow the defendant to use it to impeach the witness.

The defendant argues that the court could not have ordered a prayer for judgment continued unless it had found the defendant guilty and it was error under Rule 609(a) not to let him impeach the witness with this document. N.C.G.S. § 15A-101(4a) says:

Entry of Judgment.—Judgment is entered when sentence is pronounced. Prayer for judgment continued upon payment of costs, without more, does not constitute the entry of judgment.

Under this section, the court did not enter a judgment unless the phrase "[h]ave no contact with each other[,]" which was on the court document, is something "more" which would keep this section from applying. The phrase is ambiguous. If it means the defendant and the prosecuting witness should have no contact with each other, the court could not bind the prosecuting witness not to seek out the defendant. We hold there was nothing "more" on the record to keep this section from applying. The record did not show a conviction and it was not error to deny the defendant the use of this record.

This assignment of error is overruled.

[4] The defendant next assigns error to the sustaining of objections to three questions asked on cross-examination of Chief Deputy Floyd Laughter of the Rutherford County Sheriff's Department. In order to prove premeditation and deliberation, the State introduced evidence of prior threats by the defendant to the victim. Mr. Laughter testified that the victim had told him the defendant had told her he would have her killed.

On cross-examination, the defendant elicited testimony from Mr. Laughter that he had investigated hundreds of domestic violence cases. The defendant then propounded to Mr. Laughter the following two questions to which objections were sustained.

Q. Well, sometimes in domestic investigations, because of the nature of domestic relations, the initial report you get about something is not true; isn't that right?

. . . .

Q. Do you sometimes find out in a domestic investigation . . . that the initial report doesn't square with what you learned as part of your separate investigation?

Mr. Laughter had testified that the victim was nervous and upset when he interviewed her in regard to the defendant's threat to her. The following colloquy then occurred between the defendant's attorney and the witness:

Q. Sometimes it's because people are nervous and upset and scared, like you described. Isn't that right?

A. Yes.

Q. And sometimes it's because they're not telling a police officer the truth; isn't that right?

A. It's possible.

MR. LEONARD: Objection.

THE COURT: Well, that's speculative. Sustained.

The defendant contends it was error to sustain the objections to these three questions. There is nothing in the record to show what the response of the witness would have been if he had been allowed to answer the first two questions. We are not able to determine if the defendant was prejudiced by the exclusion of the answers. The defendant says it is apparent what the answers would have been and the record is adequately preserved for review. *State v. Hester*, 330 N.C. 547, 411 S.E.2d 610 (1992). It is by no means apparent to us that the witness would have answered as the defendant wanted him to answer. We cannot rule favorably to the defendant on this question. *State v. Simpson*, 314 N.C. 359, 334 S.E.2d 53 (1985). As to the third question, the witness answered "[i]t's possible" before the court sustained the objection. We know what the answer would have been. In light of the equivocal nature of the witness' answer, the defendant was not prejudiced by the exclusion of this testimony. This assignment of error is overruled.

[5] The defendant's last assignment of error deals with the testimony of the victim's son. When he was testifying in regard to leaving his mother's house after the surreptitious entry by the defendant, he was asked what was his state of mind at that time. He said, "[f]ear."

The defendant says the testimony by this witness that he was in fear when he climbed out the window of his mother's house was not relevant to any issue in the case and it only went to prove the defendant's character and that he acted in conformity therewith. He says the testimony should have been excluded pursuant to N.C.G.S. § 8C-1,

Rule 404(a). *See State v. Bell,* 87 N.C. App. 626, 362 S.E.2d 288 (1987) and *State v. Slade,* 71 N.C. App. 212, 321 S.E.2d 490 (1984).

It should have added very little to the knowledge of the jury for the witness to say he was in fear when he fled from the house when he found the defendant in it. The jury had probably concluded on its own that this was so. Nevertheless, this testimony was relevant to prove matters at issue other than the character of the defendant.

Whether the witness' fear at the time of the entry was for his own safety or the safety of his mother, it was relevant to rebut the defendant's contention that he was in the house with the consent of the victim. Further, the witness' feeling of fear served to corroborate the testimony of witnesses indicating the defendant had threatened the victim and demonstrates the state of the familial relationship in the period immediately preceding the murder. This assignment of error is overruled.

NO ERROR.