STATE OF NORTH CAROLINA v. DALTON OSBORN BRUNSON

No. COA03-240

(Filed 3 August 2004)

**1. Drugs— trafficking in cocaine—federal conviction of unlawful distribution—state prosecution barred**

N.C.G.S. § 90-97 barred the prosecution of defendant in state court for trafficking in cocaine after defendant was convicted in federal court of unlawful distribution of cocaine under federal law for the same transactions that formed the basis for the trafficking charges. The "same act" as used in N.C.G.S. § 90-97 focuses the relevant analysis on the underlying actions for which defendant is prosecuted at the state and federal levels rather than on the elements of the offenses.

**2. Drugs— conspiracy to traffic in cocaine—federal conviction of unlawful distribution—state prosecution not barred**

N.C.G.S. § 90-97 does not bar the prosecution of defendant in state court for conspiracy to traffic in cocaine by sale after defendant was convicted in federal court of unlawful distribution of cocaine because the federal statute under which defendant was convicted only criminalizes the acts of manufacturing, distributing, dispensing or possession with the intent to engage in one of those acts; conspiracy is separately prohibited by another

federal statute; and defendant was not charged in federal court under the conspiracy statute.

**3. Conspiracy— number of conspiracies—trafficking in cocaine—sufficiency of evidence**

The trial court erred by concluding that there was sufficient evidence to show three separate conspiracies to traffic in cocaine, because: (1) the undercover officer's objective was at all times to identify and apprehend a drug dealer's source; (2) each transaction was temporally separated from the preceding transaction by no more than fourteen days and all transactions transpired over a short period of time within a one month period; (3) the undercover officer's statement to the drug dealer indicated the transaction was not a separate or discreet transaction but was to be part of an ongoing agreement for the continued purchase and supply of cocaine; and (4) the transactions were sufficiently similar based on the surrounding circumstances to hold that the transactions were part of a single conspiracy entered into by the same parties for the same purpose.

**4. Drugs— motion for appropriate relief—habitual felon conviction—possession of cocaine**

Defendant's motion for appropriate relief seeking to overturn his habitual felon conviction is denied because our Supreme Court has held that the offense of possession of cocaine is classified as a felony for all purposes.

Appeal by defendant from judgments entered 28 June 2002 by Judge A. Leon Stanback, Jr. in Durham County Superior Court. Heard in the Court of Appeals 19 November 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General Jeffrey B. Parsons, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Constance E. Widenhouse, for defendant-appellant.*

CALABRIA, Judge.

In March 2001, a detective from the Durham County Sheriff's Department initiated an undercover drug operation. After numerous purchases of prescription controlled substances from Nancy Ashley ("Ashley"), the undercover officer negotiated to purchase one and one-half ounces of cocaine from her. On 5 April 2001, the

STATE v. BRUNSON

[165 N.C. App. 667 (2004)]

undercover officer met Ashley and went to her sister's house to arrange a deal.

Thereafter, Dalton Osborn Brunson ("defendant") arrived and greetings were exchanged. Defendant sold the undercover officer a bag of white powder between the size of a golf ball and a tennis ball. Later, the State Bureau of Investigation ("SBI") confirmed the bag of white powder contained 41.5 grams of cocaine hydrochloride ("cocaine"). On 17 April and again on 1 May 2001, two additional purchases for approximately one and one-half ounces of cocaine occurred. Immediately following defendant's 1 May 2001 sale to the undercover officer, law enforcement officials apprehended and arrested defendant after he attempted to flee.

On 6 August 2001, defendant was indicted by the Durham County Grand Jury of, *inter alia*, three counts of conspiracy to traffic in cocaine, nine counts of trafficking in cocaine, and four counts of possession of cocaine with intent to sell or deliver. On 27 August 2001, after state prosecutors supplied the pertinent information to federal prosecutors, defendant was also charged, *inter alia*, with three counts of unlawful distribution of cocaine under federal law for the same three drug transactions. Defendant pled guilty in the United States District Court for the Middle District of North Carolina on one count of unlawful distribution of cocaine and was sentenced to 166 months' imprisonment for that charge.[1] The State subsequently proceeded on the charges upon which defendant had been indicted by the Durham County Grand Jury. Defendant moved to dismiss the drug-related charges, contending "that the North Carolina Constitution, the law of the land provision, does not permit the State to [exact] double punishment for the same conduct." The trial court denied defendant's motion. The jury found defendant guilty of all drug-related offenses and of being a habitual felon. The trial court arrested judgment on the four counts of possession with intent to sell and deliver cocaine and sentenced defendant on the remaining charges relating to the transactions between the undercover officer and defendant. Defendant appeals.

On appeal, we consider defendant's assertions that (I) the trial court erred in failing to dismiss the State charges relating to the transactions between defendant and the undercover officer and (II) the evidence was insufficient to show three separate conspiracies.

---

1. The State stipulated the federal sentence was based on all three drug sales, even though there was a plea to only one count.

I. North Carolina General Statutes § 90-97

**[1]** Many of defendant's assignments of error turn on the issue of whether the federal charges and the state charges constitute the same offense. At trial, defendant argued only constitutional double jeopardy grounds as a bar to his prosecution by the State. Defendant, for the first time on appeal, argues N.C. Gen. Stat. § 90-97 (2001) barred prosecution by the State for the drug-related offenses. Because the transcript reveals defendant failed to raise this argument in the trial court, the question is not properly before us. *See* N.C.R. App. P. 9(a) (appellate "review is solely upon the record on appeal [and] the verbatim transcript of proceedings . . ."); *State v. Hall*, 134 N.C. App. 417, 424, 517 S.E.2d 907, 912 (1999) ("where theory argued on appeal not raised in trial court, 'the law does not permit parties to swap horses between courts in order to get a better mount [on appeal]' ") (citations omitted). Nonetheless, we choose to address this argument in our discretion pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure.

North Carolina General Statutes § 90-97 provides, in pertinent part, as follows: "[i]f a violation of [the North Carolina Controlled Substances Act] is a violation of a federal law . . . , a conviction or acquittal under federal law . . . *for the same act* is a bar to prosecution in this State." (Emphasis added). Defendant was prosecuted for violation of 21 U.S.C. § 841 (2003), which criminalizes the acts of manufacturing, distributing, or dispensing controlled substances or possession with intent to engage in one of those acts. He was also prosecuted by the State for, *inter alia*, trafficking offenses in violation of N.C. Gen. Stat. § 90-95(h)(3) (2003). This Court has previously remarked upon the effect of N.C. Gen. Stat. § 90-97 in this context. *State v. Woods*, 146 N.C. App. 686, 544 S.E.2d 383 (2001). In *Woods*, we examined the relevant language of the two substantive offenses defined in N.C. Gen. Stat. § 90-95 and 21 U.S.C. § 841 and observed "the elements of the state violation and the federal violation are nearly identical." *Id.* at 691, 544 S.E.2d at 386. Accordingly, we noted that felonious trafficking in drugs, as proscribed by the state statute, also violated 21 U.S.C. § 841 and "but for N.C. Gen. Stat. § 90-97, [defendant] could have been prosecuted for both." *Id.* at 692, 544 S.E.2d at 387.

The State argues *State v. Overton*, 60 N.C. App. 1, 298 S.E.2d 695 (1982), defines "the same act" as it is used in N.C. Gen. Stat. § 90-97 to require an elemental analysis of the state and federal statutory

offenses charged and, based on that reading, urges this Court to uphold the judgment below. This argument fails for two reasons. First, and most directly, *Woods* makes clear that, even if we did read *Overton* to require an elemental approach, the elements of the offenses charged in this case were deemed "nearly identical." Moreover, we do not read *Overton*, in the first instance, as requiring the elemental approach advocated by the State. *Overton* merely recognized that the two conspiracy charges in that case (conspiracy to *import* a controlled substance on the federal level as opposed to conspiracy to *manufacture, possess with intent to sell or deliver, or to sell or deliver* a controlled substance on the state level) were different acts. Nothing in *Overton* suggests the State's proposed elemental approach was used or adopted by this Court.

Applied to the case *sub judice*, we hold that "the same act" as used in N.C. Gen. Stat. § 90-97 focuses the relevant analysis on the underlying actions for which defendant is prosecuted at the state and federal levels and operates as a bar to the State's prosecution of defendant's trafficking offenses under N.C. Gen. Stat. § 90-95. We need not reach defendant's constitutional argument.

**[2]** Defendant also asserts, on the basis of N.C. Gen. Stat. § 90-97, that the three counts of conspiracy to traffic in cocaine by sale were barred. We disagree. Under 21 U.S.C. § 841, only the acts of manufacturing, distributing, dispensing, or possession with intent to engage in one of those acts are criminalized. Conspiracy is separately prohibited in 21 U.S.C. § 846 (2001), with which defendant was not charged.[2] Accordingly, the prohibition against subsequent prosecution by the State found in N.C. Gen. Stat. § 90-97 is not applicable under these facts to the offense of conspiracy to traffic in cocaine by sale, and defendant's argument is without merit.

II. Number of Conspiracies

**[3]** Defendant asserts the evidence at trial showed defendant was guilty of only one conspiracy to traffic in cocaine rather than three separate conspiracies. Specifically, defendant contends that, although there was a series of agreements and acts, they constituted a single conspiracy.

---

2. *See also Overton*, 60 N.C. App. at 35, 298 S.E.2d at 715, n.7 (noting "the [United States] Supreme Court held that convictions and separate consecutive sentences received for conspiracy to import marijuana (21 U.S.C. § 963) and conspiracy to distribute marijuana reflected Congressional intent . . . and [the two statutes] specify different ends as the proscribed object of the conspiracy. . .").

"A criminal conspiracy is an agreement, express or implied, between two or more persons to do an unlawful act or to do a lawful act by unlawful means." *State v. Burmeister*, 131 N.C. App. 190, 199, 506 S.E.2d 278, 283 (1998). A "conspiracy is complete upon formation of the unlawful agreement [but] continues until the conspiracy comes to fruition or is abandoned." *State v. Griffin*, 112 N.C. App. 838, 841, 437 S.E.2d 390, 392 (1993). However, "[a] single conspiracy is not transformed into multiple conspiracies simply because its members vary occasionally and the same acts in furtherance of it occur over a period of time." *Id.* In determining the propriety of multiple conspiracy charges, we look to "the nature of the agreement or agreements" in light of the following factors: "time intervals, participants, objectives, and number of meetings . . . ." *State v. Tabron*, 147 N.C. App. 303, 306, 556 S.E.2d 584, 586 (2001).

In the instant case, these factors support the existence of a single conspiracy. Initially, the three drug transactions involved the same principal participants engaging in virtually identical conduct for each transaction. In each transaction, the undercover officer contacted Ashley by phone and asked her to arrange a meeting in which he would purchase one and one-half ounces of cocaine. Each time, Ashley then contacted defendant and arranged for herself, the undercover officer, and defendant to meet and make the exchange.[3] After each transaction between defendant and the undercover officer, the undercover officer paid Ashley a "commission" for arranging the transfer.

Regarding the objective sought to be accomplished, the undercover officer testified his private motivation was to identify Ashley's source in the first transaction, confirm the source in the second, and close down the source in the third; however, it could easily be stated that the undercover officer's objective was, at all times, to identify and apprehend Ashley's source. Certainly with respect to Ashley and defendant, the objective remained the same. Ashley's objective was to arrange a drug transaction and receive a "commission" for doing so, and defendant's objective was the sale of drugs to a purchaser.

---

3. Ashley's roommate, the State argues, was present during one transaction; however, the undercover officer testified "she just happened to be in the residence" and that she was not "part of [the] transaction at any point with Mr. Brunson." Additionally, the State argues Ashley's sister was present during another transaction; however, the undercover officer testified she "came . . . and bought a bag of cocaine from the defendant" after the transaction between defendant and the undercover officer occurred. Neither individual, from the facts presented on the record, had an impact on the transactions considered in the case *sub judice*.

STATE v. BRUNSON

[165 N.C. App. 667 (2004)]

Additionally, the indictments all aver the same objective: trafficking by sale in a controlled substance.

Looking at the time interval, we note that each transaction was temporally separated from the preceding transaction by no more than fourteen days and "all transactions transpired over a short period of time, a one month period." *See Griffin*, 112 N.C. App. at 841, 437 S.E.2d at 392 (rejecting the argument that multiple conspiracies existed "because the offenses occurred one to two weeks apart").

Additionally, we note the undercover officer testified that he continued to contact Ashley throughout the time the transactions were being planned and "told her . . . that [he] did want to make another purchase of cocaine, buy another one-and-a-half ounces." This statement indicates the transaction was not a separate or discreet transaction but was to be part of an ongoing agreement for the continued purchase and supply of cocaine. The State's arguments, that there were some discrepancies in how Ashley was paid her commission or that one of the transactions took place at a different location, are unavailing. Admittedly, each transaction was not a mirror image of the other transactions; however, we have never required, and do not herein adopt, absolute precision in examining the similarities of the surrounding circumstances in order to determine the number of conspiracies. In short, we find the transactions sufficiently similar in consideration of the factors set forth in *Tabron* and the surrounding circumstances to hold that the transactions were part of a single conspiracy entered into by the same parties for the same purpose.

III. Motion for Appropriate Relief

[4] Defendant has submitted a motion for appropriate relief, seeking to overturn his habitual felon conviction. The motion for appropriate relief is properly before this Court because "appellate courts may rule on such a motion under N.C. Gen. Stat. § 15A-1418 . . . when the defendant has . . . an appeal of right." *State v. Jamerson*, 161 N.C. App. 527, 530, 588 S.E.2d 545, 547 (2003). Defendant's arguments are premised upon this Court's holdings in *State v. Jones*, 161 N.C. App. 60, 588 S.E.2d 5, *stay granted*, 357 N.C. 660, 589 S.E.2d 882 (2003) and *State v. Sneed*, 161 N.C. App. 331, 588 S.E.2d 74, *stay granted*, 357 N.C. 661, 589 S.E.2d 883 (2003) (holding a habitual felon indictment cannot be predicated upon misdemeanor cocaine possession convictions). In reviewing *Jones* and *Sneed*, our Supreme Court held "the offense of possession of cocaine is classified as a felony for all purposes." *State v. Jones*, 358 N.C. 473, 486, —— S.E.2d

——, —— (2004). We hold accordingly and deny defendant's motion for appropriate relief.

In summary, defendant's prosecution by the State for cocaine trafficking convictions, but not for conspiracy to traffic in cocaine convictions, were barred by operation of N.C. Gen. Stat. § 90-97. Furthermore, the trial court erred in denying defendant's motion to dismiss two counts of conspiracy to traffic cocaine. We remand for further proceedings consistent with this opinion.

Affirmed in part, reversed and vacated in part.

Judges BRYANT and ELMORE concur.