STATE OF NORTH CAROLINA v. DELWOOD EARL SHELLY

No. COA05-713

(Filed 21 March 2006)

## 1. Evidence— prior crimes or bad acts—stale convictions more than ten years old—actual notice—sufficiency of findings

The trial court did not abuse its discretion in a double first-degree murder and double conspiracy to commit first-degree murder case by allowing the State to impeach defendant on cross-examination with evidence of prior convictions that were more than ten years old, because: (1) although the State failed to give defendant written notice of its intent to introduce evidence of defendant's old convictions as required by N.C.G.S. § 8C-1, Rule 609, there was ample evidence that defendant had actual notice of the State's intent to use his prior convictions since the defense submitted a motion a month before trial to the judge to prohibit the impeachment of defendant by stale convictions; (2) the State provided a copy of defendant's record to the defense as a part of open file discovery with the implication that it would be used at trial; (3) an error must be more than merely technical to warrant a new trial, and it must be material and prejudicial; (4) under the circumstances presented by this case, the spirit and stated purpose of Rule 609(b) regarding notice have been met; and (5) the trial court's findings are at least marginally sufficient under Rule 609(b) to support the admission of the prior convictions, and even if the findings are found to be inadequate, defendant failed to show the outcome of the trial likely would have been different given the overwhelming evidence of defendant's guilt.

## 2. Conspiracy— first-degree murder—motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charges of conspiracy to commit first-degree murder, because: (1) defendant and his coparticipants had a clear motive for killing the victims; and (2) the events leading to the shooting sufficiently establish that the shooters were in agreement to kill the victims.

STATE v. SHELLY

[176 N.C. App. 575 (2006)]

**3. Conspiracy— first-degree murder—number of conspiracies**

The trial court erred by concluding that there was adequate evidence of two conspiracies to commit first-degree murder, and judgment is arrested as to the second conspiracy charge, because: (1) multiple overt acts arising from a single agreement do not permit prosecutions for multiple conspiracies; (2) where the evidence shows only one agreement between the individuals, a defendant may be convicted of only one conspiracy; and (3) in the instant case, the time interval was relatively short since all of the pertinent events occurred within twenty-four hours, the number of participants remained constant throughout the incident, there seemed to be only one objective which was to kill the two victims, and while the number of meetings between defendant and his coparticipants is not entirely clear from the record, the most logical inference points to only one continuous meeting.

**4. Constitutional Law— right of confrontation—gunshot residue—expert testimony—tests and report by nontestifying expert—harmless error**

The admission of an SBI forensic chemist's expert testimony as to the opinions he formed from his review of gunshot residue tests performed on the friend of two murder victims by a nontestifying SBI forensic chemist, including his review of the report prepared by the other chemist, did not violate defendant's Sixth Amendment right of confrontation pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004). Moreover, any error under *Crawford* in the admission of the nontestifying chemist's report and testimony by the SBI chemist stating the opinion of the nontestifying chemist as contained in that report was harmless beyond a reasonable doubt where the gunshot residue testing was performed only because defendant asserted that the victims' friend may have taken a gun belonging to and used by one victim from the scene of the shootings, the opinions of both the testifying and nontestifying chemists were equivocal as to whether the victim's friend could have handled a gun at or about the time of the shootings, and the totality of the evidence in the case overwhelmingly established defendant's guilt of the murders.

Appeal by Defendant from judgments entered 16 September 2004 by Judge James Floyd Ammons, Jr. in Cumberland County Superior Court. Heard in the Court of Appeals 20 February 2006.

STATE v. SHELLY

[176 N.C. App. 575 (2006)]

*Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Constance E. Widenhouse, for Defendant-Appellant.*

STEPHENS, Judge.

Defendant appeals from judgments of the trial court convicting him of two counts of first-degree murder and two counts of conspiracy to commit first-degree murder. For the reasons stated herein, we affirm both murder convictions and one conspiracy conviction. We arrest judgment on the second conspiracy conviction.

The State's evidence tended to show that on 1 January 2002, Rodney Wilkerson gave a ride to his friends, Malcom and Andre Jackson. When Wilkerson's car arrived at a destination down a dirt road, a car in which Defendant was a passenger traveled down the same road and stopped near Wilkerson's car. Defendant was in the back seat of the car with the window partially rolled down. Wilkerson saw Defendant with a large shotgun. Wilkerson yelled, "It's a drive by" and immediately ran from his car, leaving Malcom and Andre Jackson in the vicinity of the car. While he was running, Wilkerson heard several shots. Wilkerson ran to his mother's nearby home. His mother called for emergency assistance. Upon the arrival of two sheriff's deputies, Wilkerson explained what had happened and followed the deputies to the location of the shooting. The deputies discovered the bodies of Malcom Jackson and Andre Jackson outside of Wilkerson's car.

The medical examiner found that Andre Jackson had been shot several times and had bullet wounds in his chest, chin, neck, right torso, back, and right shoulder from a shotgun blast. The victim also exhibited a handgun bullet wound to the left side of his face. The medical examiner further discovered that Malcom Jackson had also been shot several times and had shotgun pellet wounds to his right hip, right thigh and left hand. In addition, Malcom Jackson exhibited two handgun wounds to the back of his head.

Wilkerson filed a statement with the police department, and a warrant for the arrest of Defendant was signed by a magistrate on 3 January 2002. On 23 July 2002, Defendant was indicted on two counts of first-degree murder and two counts of conspiracy to commit first-degree murder. Defendant's trial began on 31 August 2004 and, on 13 September 2004, a jury found him guilty on all counts. On 16

September 2004, Judge Ammons sentenced Defendant to two consecutive life terms for the first-degree murder convictions and two consecutive terms of 220 to 273 months for the conspiracy to commit first-degree murder convictions. Defendant appeals.

[1] In his first assignment of error, Defendant argues that the trial court committed reversible error by allowing the State to impeach him on cross-examination with evidence of prior convictions that were more than ten years old. We disagree.

Rule 609 of the N.C. Evidence Code provides, in pertinent part, that:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a felony . . . shall be admitted if elicited from the witness or established by public record during cross-examination or thereafter . . . .

> Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of the conviction . . . unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

N.C. Gen. Stat. §8C-1, Rule 609(b) (2003). Thus, pursuant to Rule 609, a prior conviction that is more than ten years old may be admissible if (1) the defendant had written notice of the State's intent to use such evidence sufficiently in advance of trial to object to the evidence, and (2) the trial court makes sufficient findings that the probative value of the evidence substantially outweighs the prejudicial effect of admitting it. The trial court's ultimate determination is reversible only for a manifest abuse of discretion. *State v. Ferguson*, 105 N.C. App. 692, 414 S.E.2d 769 (1992).

In the instant case, there is no dispute that the State failed to give Defendant written notice of its intent to introduce evidence of his old convictions. Nonetheless, there is ample evidence that Defendant had actual notice of the State's intent to use his prior convictions because the defense submitted a motion, which had been authored a month before the trial, to the trial judge to prohibit the impeachment of

Defendant by "stale convictions." Outside the presence of the jury, Defendant argued that the conviction evidence of cocaine possession in 1980, as well as common law robbery, larceny, and credit card fraud in 1988, should not be allowed. The State noted that it did not "specifically write something down and say to [defense attorneys], 'I intend to use these convictions.' " However, the State provided a copy of Defendant's record to the defense as a part of open-file discovery with the "implication" that it would be used at trial. Because the defense had prepared a written motion with Defendant's conviction records attached to it several weeks before the trial, it is obvious that Defendant had actual notice that the State intended to use the prior convictions for impeachment purposes, and that the defense clearly had a fair opportunity to contest the use of such evidence.

Although it does not appear that this State's appellate courts have previously addressed the potential consequences of failing to follow the notice requirements of Rule 609(b) to the letter as those requirements relate to the specific issue raised herein, we agree with the State that to warrant a new trial, an error must be more than merely technical; it must also be material and prejudicial. This is a fundamental legal concept. *See, e.g., State v. Curmon,* 295 N.C. 453, 245 S.E.2d 503 (1978); *State v. Gilbert,* 85 N.C. App. 594, 355 S.E.2d 261 (1987); *State v. Knoll,* 84 N.C. App. 228, 352 S.E.2d 463 (1987), *rev'd on other grounds,* 322 N.C. 535, 369 S.E.2d 558 (1988); *State v. Mitchell,* 20 N.C. App. 437, 201 S.E.2d 720 (1974).

Moreover, we find persuasive guidance in the decision of this Court in *State v. Blankenship,* 89 N.C. App. 465, 366 S.E.2d 509 (1988). The defendant in *Blankenship* took the stand in his own behalf and, on direct examination, testified about his prior criminal record beginning in 1980, but failed to mention a 1972 conviction for credit card theft. Evidence regarding the 1972 conviction was discovered by the State after the State had responded to the defendant's discovery requests. The evidence had never been disclosed to the defendant, nor had the State given any notice to the defense of an intention to cross-examine the defendant regarding the 1972 conviction. On cross-examination, however, the State asked the defendant about the still undisclosed 1972 conviction and, over defendant's objection, the trial court allowed the evidence.

When the *Blankenship* Court considered the defendant's argument that the use of a prior conviction was prohibited by Rule 609(b) because the State failed to give him advance notice of an intent to use the evidence, the Court noted the absence of any North Carolina

cases determining that specific issue. The Court thus looked to federal law because the federal evidentiary rule is identical to the state rule.

Noting that the State's use of the prior conviction was to directly impeach Blankenship's credibility based on a false assertion made by him during direct examination, the Court found support for allowing the prior conviction evidence under such circumstances, despite the failure of notice, in *United States v. Johnson*, 542 F.2d 230 (5th Cir. 1976), a case in which the federal prosecutor was permitted to cross-examine the defendant about a prior conviction to impeach his credibility based on false testimony he gave on direct examination. The Fifth Circuit ruled that such use of prior conviction evidence was permitted under Rule 609 even though the government had not given the defendant any notice of its intended use of the old conviction.

The holdings in *Blankenship* and *Johnson* were premised primarily on the long-standing evidentiary rule that "[w]here one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially." *State v. Albert*, 303 N.C. 173, 177, 277 S.E.2d 439, 441 (1981). Left open is the question of whether the State may introduce prior conviction evidence other than to rebut a defendant's false testimony on direct examination, absent advance written notice. On this specific question, we have found no North Carolina or federal cases that have determined the answer.

We are guided by *Blankenship* and *Johnson* because they establish that strict adherence to Rule 609's notice requirement is not the sole test of whether prior conviction evidence is admissible. Furthermore, the purpose of the Rule's notice requirement is plain beyond contradiction, and that is "to provide the adverse party with a fair opportunity to contest the use of such evidence." N.C. Gen. Stat. § 8C-1, Rule 609(b). In a case where, as here, the defense obviously deciphered the State's intent to use the old conviction evidence by preparing a motion objecting to the evidence well in advance of trial, it cannot be reasonably or fairly determined that the failure of the State to follow the Rule to the letter prohibits use of the evidence solely on that basis. While advance written notice is preferred, we decline to reverse Defendant's convictions for what would clearly be a mere technicality. Instead, we hold that, under the circumstances presented by this case, the spirit and stated purpose of Rule 609(b) regarding notice have been met, and the trial court did not commit

reversible error by allowing the use of prior conviction evidence on this basis.

We now consider whether the trial court found sufficient facts to overcome Defendant's additional challenge to use of the prior convictions under Rule 609(b). As noted above, for such evidence to be admissible, Rule 609(b) requires the trial court to make findings of fact which demonstrate that the probative value of the evidence outweighs its prejudicial nature. This requirement of the Rule establishes "a rebuttable presumption that prior convictions more than ten years old [are] more prejudicial to defendant's defense than probative of [his] general character for credibility and, therefore, should not be admitted in evidence." *Blankenship*, 89 N.C. App. at 468, 366 S.E.2d at 511. Indeed, our courts have repeatedly recognized that the instances in which use of the old convictions is not more prejudicial than probative are "rare." *Id.* at 468, 366 S.E.2d at 511; *see also, e.g., State v. Farris*, 93 N.C. App. 757, 379 S.E.2d 283 (1989), *rev. improv. all'd*, 326 N.C. 45, 387 S.E.2d 54 (1990); *State v. Hensley*, 77 N.C. App. 192, 334 S.E.2d 783 (1985), *disc. rev. denied*, 315 N.C. 393, 338 S.E.2d 882 (1986). Further, it is settled that the prior conviction evidence is used properly only to impeach the defendant's credibility. *See, e.g., State v. Ross*, 329 N.C. 108, 405 S.E.2d 158 (1991). This is the reason that the trial judge must make specific findings as to how the prior convictions are probative on credibility issues when balancing probative value against prejudicial effect.

To enable the reviewing court to determine whether the trial court properly allowed admission of the old conviction evidence, the trial court's findings must set out the "specific facts and circumstances which demonstrate the probative value outweighs the prejudicial effect" of the evidence in question. *Hensley*, 77 N.C. App. at 195, 334 S.E.2d at 785. For the trial court to merely state that the probative value of a prior conviction outweighs its prejudicial effect in the interests of justice is insufficient under Rule 609(b). *State v. Ross*, 329 N.C. 108, 405 S.E.2d 158 (1991); *see also State v. Carter*, 326 N.C. 243, 252, 388 S.E.2d 111, 117 (1990) (trial court's "conclusory remark" that the only purpose for admitting the prior conviction evidence would be to impeach the defendant's credibility "was not a 'fact' or 'circumstance' vouching for an appropriate balance of probative [value] over prejudicial weight"); *State v. Artis*, 325 N.C. 278, 307, 384 S.E.2d 470, 486 (1989), *vacated and remanded on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990) (trial court's sole finding that the prior convictions had "a sufficient connection, supported by facts and

circumstances," inadequate to establish that the conviction evidence was more probative of defendant's credibility than prejudicial to his defense); *State v. Smith*, 155 N.C. App. 500, 573 S.E.2d 618 (2002) (error to admit prior conviction evidence without findings of specific facts and circumstances to support the trial court's determination that the evidence was more probative than prejudicial); *State v. Farris*, 93 N.C. App. 757, 379 S.E.2d 283 (1989) (stating that State must lay a foundation for the admission of prior convictions or the trial court will not have a basis for making appropriate Rule 609(b) findings).

In the instant case, the trial judge specifically found as follows:

> for the commission of the crimes of common law robbery, felonious larceny, financial [sic] credit card fraud, misdemeanor credit card fraud, I find that those are probative of truthfulness; and if the defendant chooses to place his credibility at issue by taking the witness stand, he may be cross examined on those convictions, the court having determined that the probative value of such evidence outweighs any prejudicial effect to the defendant. It is probative of his truthfulness.

To analyze the sufficiency of these findings, we compare them to Rule 609(b) findings made by various trial courts, which have been determined to be adequate by previous decisions of this Court and our Supreme Court. In *State v. Holston*, 134 N.C. App. 599, 518 S.E.2d 216 (1999), the trial court made findings of fact stating it believed that the defendant's credibility was central to the case and that evidence of an older conviction was more probative than prejudicial. On appeal, this Court held that "[a]lthough the findings are minimal, we believe they are legally sufficient in this case, as they indicate the trial court exercised meaningful discretion in weighing the probative value of the 1981 conviction against its prejudicial effect." *Id.* at 606, 518 S.E.2d at 222. Elaborating, this Court stated that because the defendant's testimony that he acted in self-defense directly contradicted all the State's evidence of an unprovoked attack on the victim, his credibility was central to the case, and therefore, the evidence of a 1981 conviction for attempted robbery was properly presented to the jury for their consideration of the defendant's credibility.

In reaching its result, the *Holston* Court identified the following considerations as factors to be addressed by the trial court when determining if conviction evidence more than ten years old should be admitted: (a) the impeachment value of the prior crime, (b) the

remoteness of the prior crime, and (c) the centrality of the defendant's credibility. *Id.* (citing 4 Joseph M. McLaughlin, *Weinstein's Federal Evidence* § 609.04[2][a] (2d ed.1999)). It logically follows that findings on each of these factors should be included in the trial court's determination.

Guidance is also available in our Supreme Court's decision in *State v. Lynch*, 337 N.C. 415, 445 S.E.2d 581 (1994), a case in which the trial court's decision to admit evidence of a prior robbery conviction in the defendant's trial for murder of his wife was challenged. Among the findings made by the trial judge to admit the robbery conviction were that (1) the defendant intended to present defenses based on diminished capacity and voluntary intoxication; (2) with respect to such defenses, the defendant's statements to mental health experts and the jury would be difficult to rebut since such statements would originate with the defendant; (3) it was important to the State to be able to impeach the defendant's credibility; (4) robbery is a crime of dishonesty because it involves taking someone's property; and (5) evidence of a conviction for robbery bears on the determination of credibility. *Id.*

In determining whether the trial court's findings regarding the admissibility of 13-year-old convictions were inadequate, this Court, in *State v. Hensley*, 77 N.C. App. 192, 334 S.E.2d 783 (1985), provided further guidance of the kind of findings necessary to establish that the requisite balancing of probative value versus prejudicial effect has been undertaken. *Hensley* involved the defendant's challenge to the trial court's ruling that prior breaking and entering and larceny convictions would be admissible to impeach his credibility based on findings that such convictions "were for 'dishonesty type things,' that they were probative of defendant's credibility, and that they would not prejudice defendant." *Id.* at 194, 334 S.E.2d at 784. This Court agreed with the defendant that these findings were insufficient under Rule 609(b). In its discussion, this Court noted that appropriate findings should address (a) whether the old convictions involved crimes of dishonesty, (b) whether the old convictions demonstrated a "continuous pattern of behavior," and (c) whether the crimes that were the subject of the old convictions were "of a different type from that for which defendant was being tried." *Id.* at 195, 334 S.E.2d at 785.

In the case now before this Court, we are of the opinion that the trial court's findings are at least minimally sufficient to support the admission of the prior convictions under Rule 609(b). We find it sig-

nificant that the trial judge declined to allow cross-examination of Defendant about a prior cocaine possession conviction because "there is [not] a significant link between possession of cocaine and truthfulness," and instead, limited the State to cross-examining Defendant regarding prior convictions for common law robbery, felonious larceny, and credit card fraud, crimes which have long been recognized to implicate dishonesty, deceit, and moral turpitude. *See, e.g., State v. Lynch,* 337 N.C. 415, 445 S.E.2d 581 (1994); *State v. Collins,* 334 N.C. 54, 431 S.E.2d 188 (1993); *Jones v. Brinkley,* 174 N.C. 23, 93 S.E. 372 (1917). We thus do not believe that a new trial is warranted on the basis of the trial court's findings of fact on the admissibility of Defendant's prior convictions.

Moreover, even if the trial judge's findings on a challenge to the admissibility of prior conviction evidence are found to be inadequate under Rule 609(b), Defendant would be entitled to a new trial only if the admission of such evidence unfairly prejudiced his defense. "The admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded." *State v. Gappins,* 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987) (citations omitted). To determine whether unfair prejudice resulted, we consider whether (1) there is substantial evidence of untruthfulness or untrustworthiness apart from the prior offenses, and (2) there is overwhelming evidence of the defendant's guilt. *See State v. Ross,* 329 N.C. 108, 405 S.E.2d 158 (1991); *Hensley,* 77 N.C. App. at 192, 334 S.E.2d at 783.

Here, Defendant admitted other more recent convictions including the trafficking of cocaine. On direct and cross-examination, Defendant's testimony was untrustworthy or untruthful when he (a) described looking at Benjamin and Lamont Shelly's injuries right after their fight with the Jackson brothers and decided to take a ride "just" to look for marijuana; (b) testified that he was asleep or unconscious when the Shelly brothers, his nephews, obtained a shotgun; (c) suddenly came upon the victims at the dirt road and failed to leave or slow down even though he felt threatened; (d) testified that Malcom Jackson was his best friend but then believed it was either "shoot or be shot" when he thought he saw a gun in Malcom Jackson's hand; (e) fired several more shots after he knew Malcom Jackson was unarmed; (f) testified that Andre Jackson ran while being fired upon, but then stated that Andre Jackson did not run; (g) testified that Rodney Wilkerson had a gun, but he did not feel threatened by

Wilkerson; and (h) was unable to explain how an unarmed Andre Jackson, who was running away from him, was more threatening that an allegedly armed Wilkerson.

In addition, there was overwhelming evidence of Defendant's guilt, including (1) Defendant's admissions, (2) the number and type of bullet wounds inflicted on each victim, (3) Defendant's attempt to hide the weapons, and (4) Defendant's leaving the scene without calling an ambulance. Consequently, Defendant has not shown that the outcome of the trial likely would have been different had the jury not heard about his prior convictions which were older than ten years.

We thus hold that, under the circumstances of this case in which (a) there is no contest that Defendant had actual notice of the State's intent to use his old convictions for impeachment purposes at trial and had ample opportunity to contest the use of such evidence, (b) the trial court made at least marginally sufficient findings of fact demonstrating that it had properly weighed the probative value of the impeachment evidence against its potential prejudicial effect, and (c) the evidence as a whole overwhelmingly established that admission of the prior conviction evidence did not prejudice Defendant, the trial court did not commit reversible error by allowing the State to use the prior convictions to impeach Defendant's credibility. Accordingly, we overrule this assignment of error.

**[2]** By his second assignment of error, Defendant argues that the trial court erred in denying his motion to dismiss the charges of conspiracy to commit first-degree murder.

Upon a motion to dismiss, the trial court must determine whether there is substantial evidence, taken in the light most favorable to the State, of each essential element of the offense charged, or of a lesser offense included therein, and of the defendant being the perpetrator of the offense. *State v. Powell*, 299 N.C. 95, 261 S.E.2d 114 (1980). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The evidence is considered in the light most favorable to the State, and the State is entitled to every reasonable inference arising from it. *Powell*, 299 N.C. at 99, 261 S.E.2d at 117. The trial court is concerned only with the sufficiency of the evidence to go to the jury, and not the weight to be accorded the evidence. *State v. Thaggard*, 168 N.C. App. 263, 608 S.E.2d 774 (2005).

"A criminal conspiracy is an agreement between two or more people to do an unlawful act or to do a lawful act in an unlawful manner. In order to prove conspiracy, the State need not prove an express agreement; evidence tending to show a mutual, implied understanding will suffice." *State v. Morgan*, 329 N.C. 654, 658, 406 S.E.2d 833, 835 (1991) (citations omitted). This evidence may be circumstantial or inferred from the defendant's behavior. *See State v. Choppy*, 141 N.C. App. 32, 39, 539 S.E.2d 44, 49 (2000), *disc. rev. denied*, 353 N.C. 384, 547 S.E.2d 817 (2001). The crime of conspiracy does not require an overt act for its completion; the agreement itself is the crime. *State v. Bindyke*, 288 N.C. 608, 616, 220 S.E.2d 521, 526 (1975).

In this case, the evidence most favorable to the State showed that on 31 December 2001, Tracie New picked Andre Jackson up and together they went to Defendant's home to pick Defendant up. They then rode around looking for a place to buy marijuana. After stopping the car, Defendant and Andre Jackson left the car. New remained in the vehicle. She was unaware of what, if any, transaction had taken place when the two men returned to her vehicle. New then dropped both men off at Defendant's home. Approximately one hour later, New went to a party with Andre Jackson at the apartment in which Benjamin and Lamont Shelly lived. New testified that at the party, Andre Jackson got into a fistfight with Defendant and other men, including Benjamin Shelly, one of Defendant's nephews. Andre Jackson continued to argue as he was leaving the apartment. Because the partygoers did not want to get in trouble with other tenants or the police over the fighting and noise, the party moved to an outdoor area near an abandoned house. Defendant saw Andre Jackson's truck cruise slowly by Defendant's mother's home. Defendant testified that he believed Andre Jackson was looking for him to retaliate for the fight earlier that evening.

The next day, Andre Jackson returned to the Shellys' apartment with his brother, Malcom Jackson. As soon as he entered the apartment, Andre Jackson "threw [Benjamin Shelly] into the wall." The fighting escalated, involving both Malcom and Andre Jackson against Benjamin and Lamont Shelly. Eventually, the altercation ended, and Malcom and Andre Jackson left the apartment. Crystal Gilfillan, who was at the apartment but could not see into the room where the men were fighting, testified that she noted "a huge knot on the top of [Lamont Shelly's] head" after the fight. Benjamin Shelly had a black eye. Approximately ten minutes after the Jacksons left, Lamont Shelly called Defendant.

Soon thereafter, Defendant, accompanied by Benjamin and Lamont Shelly, went to the Jackson home. Defendant asked Andre Jackson's twelve-year-old son, Bryan Lewis, the whereabouts of Andre Jackson. Lewis replied that he did not know. Defendant and the Shellys then left. Defendant testified that Benjamin Shelly believed that Andre Jackson had stolen his gun from the apartment. Therefore, they placed a loaded shotgun on the back seat of the Shellys' car. Before driving to the dirt road, the Shellys found the handgun that they thought the Jacksons had stolen. Lamont Shelly had a black handgun. There was a total of three guns in the car.

After Rodney Wilkerson had driven the Jacksons down the dirt road and parked the car, Lamont Shelly sped down the dirt lane toward Wilkerson's car. Defendant fired his shotgun at Andre Jackson. Then Lamont Shelly got out of the driver's seat of the car in which Defendant was riding and fired at close range.

Direct evidence shows that Defendant and Andre Jackson fought the night before the shooting. In addition, Lamont Shelly called Defendant after he had been "jumped" by Andre and Malcom Jackson. The evidence also shows that Defendant came looking for Andre Jackson shortly after Lamont Shelly called him and before the Jacksons were killed. Defendant rode in a vehicle with three guns and two other people. Defendant and the Shellys did not shoot or even fire their guns toward either Tracie New or Rodney Wilkerson. This is evidence that the three gunmen had decided to kill only Andre and Malcom Jackson.

Defendant and the Shellys had a clear motive for killing the Jackson brothers. Furthermore, the events leading to the shooting sufficiently establish that the shooters were in agreement to kill Andre and Malcom Jackson. Our Supreme Court has recognized that " '[d]irect proof of the charge [conspiracy] is not essential, for such is rarely obtainable. It may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy.' " *State v. Gibbs*, 335 N.C. 1, 48, 436 S.E.2d 321, 348 (1993) (quoting *State v. Whiteside*, 204 N.C. 710, 712-13, 169 S.E. 711, 712 (1933)). The acts of Defendant and his nephews establish beyond reasonable doubt that each had clear animus and each knew about the animus of the others. The totality of Defendant's acts in response to his and his nephews' animus plainly evidences an agreement to kill the Jackson brothers, formed after premeditation and deliberation, and supports the trial court's submission of conspiracy to commit

first-degree murder to the jury. Accordingly, we hold that there was sufficient evidence tending to show a mutual, implied understanding to commit first-degree murder between Defendant and his nephews, Benjamin and Lamont Shelly.

[3] By his third assignment of error, Defendant argues alternatively that even if there was adequate evidence of conspiracy to commit first-degree murder, there was insufficient evidence of *two* such conspiracies. On this issue, we agree with Defendant.

This Court has held that "multiple overt acts arising from a single agreement do not permit prosecutions for multiple conspiracies." *State v. Rozier*, 69 N.C. App. 38, 47, 316 S.E.2d 893, 900, *cert. denied*, 312 N.C. 88, 321 S.E.2d 907 (1984). "[W]hen the State elects to charge separate conspiracies, it must prove not only the existence of at least two agreements but also that they were separate." *State v. Griffin*, 112 N.C. App. 838, 840, 437 S.E.2d 390, 392 (1993). Where the evidence shows only one agreement between the individuals, a defendant may be convicted of only one conspiracy. *See State v. Brunson*, 165 N.C. App. 667, 599 S.E.2d 576 (2004). In determining the propriety of multiple conspiracy charges, this Court must consider the nature of the agreement(s) in light of the following factors: (1) time intervals, (2) participants, (3) objectives, and (4) number of meetings. *State v. Tabron*, 147 N.C. App. 303, 556 S.E.2d 584 (2001), *rev. improv. all'd*, 356 N.C. 122, 564 S.E.2d 881 (2002).

In the instant case, the State argues that there was evidence of two agreements because Defendant's animus was directed solely at Andre Jackson due to the fight the previous night and the Shellys' animus was directed at Malcom Jackson due to the fight that morning. The State contends that the jury could conclude from the separate motivations that there were separate agreements. In addition, the State argues that the manner of the killings is important because Defendant focused his shots on Andre Jackson and the Shellys focused on Malcom Jackson, evidenced by the varying shotgun and handgun wounds.

However, our careful review of the record, in light of the factors that we must consider, reveals the following pertinent facts: (a) the time interval was relatively short, since all of the pertinent events occurred within twenty-four hours; (b) the number of participants (three) remained constant throughout the incident; (c) there seemed to be only one objective, to kill the Jackson brothers; and (d) while the number of meetings between Defendant and the Shelly brothers

is not entirely clear from the record, the most logical inference points to only one continuous meeting since Defendant and the Shellys were together almost all of the afternoon following Lamont Shelly's call to Defendant, up to the time of the killings. See State v. Dalton, 122 N.C. App. 666, 471 S.E.2d 657 (1996).

On this evidence, we hold that the State did not present substantial evidence that Defendant entered into two separate conspiracies to commit first-degree murder. Therefore, it was error for the trial court to deny Defendant's motion to dismiss one of the conspiracy charges, and only one conspiracy conviction can stand. Accordingly, we arrest judgment as to the second conspiracy charge.

[4] By his fourth and final assignment of error, Defendant argues that the trial court erred by admitting the expert testimony of SBI Agent Chuck McClelland regarding gunshot residue testing conducted on Rodney Wilkerson based on a report that was not prepared by Agent McClelland. Defendant relies on the decision of the United States Supreme Court in Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177 (2004), to support his position that admission of McClelland's testimony violated Defendant's Sixth Amendment guarantee to confront the witnesses against him. For the following reasons, we hold that even if the evidence was erroneously admitted, its admission was harmless error beyond a reasonable doubt.

The State's investigation of the shooting deaths of the Jackson brothers included collection of a gunshot residue kit from the Jacksons' friend, Rodney Wilkerson. This part of the investigation was prompted by defense allegations that Wilkerson took a gun belonging to one of the Jacksons away from the scene of the shooting. At the SBI Laboratory, SBI analyst Ken Culbreth performed the analysis of the test data at a time when Agent McClelland was not present. Agent Culbreth, who had retired after thirty years with the SBI and was not called by the State to testify, prepared a report of his findings, which included his opinion of whether gunshot residue was present on Wilkerson's hands.

At trial, Agent McClelland, an eighteen-year veteran of the SBI's Trace Evidence Section, was found by the court to be an expert in forensic chemistry. He testified that he and Agent Culbreth were senior chemists in the SBI Lab for analysis of gunshot residue. He explained the procedures for performing the analysis of a gunshot residue kit, the equipment used in the analysis, and the methods used

for assessing and recording the data thereby obtained. In this case, he said he personally examined the printout from the equipment used by Agent Culbreth to conduct the testing, he compared that data to Agent Culbreth's notes, and he then signed off on the final report. His actions in these respects were mandated by his employer's quality assurance requirements. After reviewing the results of Agent Culbreth's testing, Agent McClelland concluded that there was either no gunshot residue detected on Wilkerson's hands or only very trace, insignificant amounts were present. He further offered his opinion, based on his review and analysis of the test data, that gunshot residue was not present in significant concentrations on Wilkerson's hands. He was then permitted to read into evidence Agent Culbreth's identical opinion from the written report.

Under *Crawford*, "the determinative question with respect to confrontation analysis is whether the challenged hearsay statement is testimonial." *State v. Lewis*, 360 N.C. 1, 14, 619 S.E.2d 830, 839 (2005). The *Lewis* Court, relying on its decisions in *State v. Bell*, 359 N.C. 1, 603 S.E.2d 93 (2004), *cert. denied*, 544 U.S. 1052, 161 L. Ed. 2d 1094 (2005), and *State v. Morgan*, 359 N.C. 131, 604 S.E.2d 886 (2004), *cert. denied*, —— U.S. ——, 163 L. Ed. 2d 79 (2005), as well as *Crawford*, provided a comprehensive analysis of how to determine whether evidence is testimonial in nature, in an effort to guide our trial courts and litigants. The *Lewis* Court first noted that, under *Crawford*, the term "testimonial," at a minimum, "applies to 'prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to *police interrogations.*'" *Lewis*, 360 N.C. at 15, 619 S.E.2d at 839 (citations omitted). In our opinion, Agent McClelland's testimony does not fit into any of these classifications, and therefore, we do not discuss the application of the *Crawford* test to his testimony on any of these grounds.

Rather, with respect to the issue as raised by the case before us, we find instructive the *Lewis* Court's discussion of testimonial statements in the context of an examination of the declarant's state of mind. Based on a "comprehensive survey of other jurisdictions," *Lewis* agreed that testimonial statements "share a common characteristic: The declarant's knowledge, expectation, or intent that his or her statements will be used at a subsequent trial." *Id.* at 21, 619 S.E.2d at 843. The Court then specifically held that an additional test for determining whether evidence is testimonial is "considering the surrounding circumstances, whether a reasonable person in the declarant's position would know or should have known his or her

statements would be used at a subsequent trial. This determination is to be measured by an objective, not subjective, standard." *Id.*

In response to Defendant's *Crawford* argument, the State argues that, under the circumstances surrounding Agent McClelland's testimony, the issue has been decided by the decision of this Court in *State v. Delaney*, 171 N.C. App. 141, 613 S.E.2d 699 (2005), and that we are bound by that decision. *Delaney* addressed and resolved the *Crawford* argument on facts substantially similar to the facts at issue in this case, and we agree with the State that, even though *Delaney* was filed more than three months before our Supreme Court's decision in *State v. Lewis*, the *Delaney* holding does not conflict with the *Lewis* decision on the particular issue raised in *Delaney* and in the case now before us.

In *Delaney*, an SBI agent testifying as an expert in the analysis of controlled substances offered his opinion as to the identity of substances taken from the defendant's property based on testing conducted by an SBI colleague who was not called to testify. Recognizing the well-settled law that an expert may base an opinion on tests performed by others in the field, and noting that the defendant was allowed the opportunity to cross-examine the testifying agent regarding his opinions, this Court concluded that allowing the expert to testify did not violate the defendant's confrontation rights under the *Crawford* rationale. "The admission into evidence of expert opinion based upon information not itself admissible into evidence does not violate the Sixth Amendment guarantee of the right of an accused to confront his accusers where the expert is available for cross-examination." Delaney, 171 N.C. App. at 141, 613 S.E.2d at 700 (quotations omitted). This particular issue was not present in *Lewis*. Thus, as to Agent McClelland's testimony regarding the opinions he formed from his review of the test data, including his review of the report prepared by Agent Culbreth, we find nothing in the rationale or holding of *Lewis* that would compel a different result now from the result in *Delaney*.

As for the admission of Agent Culbreth's report and the testimony of Agent McClelland stating Agent Culbreth's opinion as contained in that report on the results of the gunshot residue testing, we likewise are not persuaded that *Crawford* or *Lewis* prevents the admission of such evidence through the testifying expert. *See, e.g., State v. Jones*, 322 N.C. 406, 368 S.E.2d 844 (1988). But, even if *Crawford* and its progeny now compel exclusion of this portion of Agent McClelland's testimony, such that it was error for the trial court to admit the writ-

ten report and the testimony of Agent McClelland regarding Agent Culbreth's opinion, such error was manifestly harmless beyond a reasonable doubt.[1]

As noted above, the gunshot residue testing was performed only on Rodney Wilkerson and only because Defendant asserted that Wilkerson may have taken a gun belonging to or being used by one of the victims away from the scene when he fled at the outset of the shootings. Obviously, the absence of gunshot residue on Wilkerson's hands would tend to establish that Defendant's allegations were unfounded. On direct examination of Agent McClelland about Agent Culbreth's opinions, however, the following exchange occurred:

> Q. Okay. Is that the report which shows the conclusion of Mr. Culbreth based upon his examination of the underlying data in this case?
>
> A. Yes, sir.
>
> . . . .
>
> Q. What does his report conclude?
>
> A. "Barium, antimony and lead indicative of gunshot residue were not present in significant concentrations on the hand-wipings submitted. *It is to be noted, however, that this does not eliminate the possibility that the subject could have fired a gun.*"

(Emphasis added). Agent McClelland then testified that he formed the same opinions independently of Agent Culbreth's opinions. Defense counsel found the emphasized sentence from Agent Culbreth's report so significant that, on cross-examination of Agent McClelland, he asked the agent to read it again "slowly and loudly." He then elicited the following testimony from Agent McClelland:

> It means that I could not . . . or Agent Culbreth could not say that [Wilkerson] did not fire a weapon because we don't know what he did or what activities he did after the weapon was discharged . . . [I]f someone was to wash their hands, they would completely remove the gunshot residue[.]

---

1. We distinguish the cases of *State v. Cao,* 175 N.C. App. 434, 626 S.E.2d 301 (2006), and *State v. Melton,* 175 N.C. App. 733, 625 S.E.2d 609 (2006), since the witnesses who testified in those cases and through whom the lab reports in question were admitted were not testifying as experts per Rule 703, unlike the instant case.

STATE v. SHELLY

[176 N.C. App. 575 (2006)]

This evidence defeats Defendant's argument on appeal that the testimony of Agent McClelland made it less likely that the jury would accept Defendant's theory that Malcom Jackson had a gun or that Wilkerson removed it from the scene. Simply put, the properly admitted independent opinion of Agent McClelland, as well as the opinion of Agent Culbreth as expressed in the written report he prepared, were equivocal on the question of whether Wilkerson could have handled a gun at or about the time of the slayings of Andre and Malcom Jackson.

The totality of the evidence in this case overwhelmingly establishes Defendant's guilt, and therefore, error, if any, in the admission of the SBI report and testimony about the non-testifying agent's opinions was harmless beyond a reasonable doubt. *See, e.g., State v. Edwards,* 174 N.C. App. 490, 621 S.E.2d 333 (2005); *State v. Thompson,* 110 N.C. App. 217, 429 S.E.2d 590 (1993). Accordingly, we overrule Defendant's final assignment of error.

In conclusion, we hold that there is no error in Defendant's convictions on two counts of first-degree murder and one count of conspiracy to commit first-degree murder. We arrest judgment and vacate the conviction on the second count of conspiracy to commit first-degree murder.

Affirmed in part, vacated in part.

Chief Judge MARTIN and Judge WYNN concur.