STATE OF NORTH CAROLINA v. HENRY ARTHUR LITTLE

No. COA07-128

(Filed 15 January 2008)

**1. Evidence— expert DNA testimony—analysis based on data collection by another expert**

The trial court properly allowed an SBI DNA expert to testify in a rape and assault trial where she personally analyzed the data collected by another agent before offering her opinion, and defendant had the opportunity to cross-examine her.

**2. Rape— sufficiency of evidence—victim's testimony and DNA evidence**

The trial court did not err by denying defendant's motion to dismiss a charge of first-degree rape. Viewed in the light most favorable to the State, the victim's account of the attack, corroborated by DNA evidence, was sufficient.

**3. Assault— strangulation—sufficiency of evidence—victim's account and photographs**

The trial court properly denied defendant's motion to dismiss a charge of assault by strangulation. The victim's testimony and confirming photographs of cuts and bruises were sufficient.

Appeal by defendant from judgment entered 21 September 2006 by Judge Jerry C. Martin in Beaufort County Superior Court. Heard in the Court of Appeals 10 October 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz, for the State.*

*Thomas R. Sallenger for defendant.*

ELMORE, Judge.

Henry Arthur Little (defendant) was convicted by a jury of first-degree rape and assault by strangulation on 21 September 2006. Defendant now appeals.

The victim, Lorry Paggioli, lived in Beaufort County in June of 2005. She did not have a job or a home, and stayed with friends. She also abused alcohol and crack cocaine. Paggioli stayed with defendant for several weeks prior to 14 June 2005, and the two had consensual sex. On the night of 13 June 2005 and into the morning of 14 June 2005, Paggioli was drinking beer and smoking crack in the trailer of a friend, Mary Hardy. Hardy's boyfriend asked Paggioli to leave, and she went to defendant's trailer in a neighboring trailer park. They drank wine and smoked crack together. Paggioli then returned to Hardy's trailer and Hardy's boyfriend again told her to leave. Paggioli returned to defendant's trailer, and the two drank more wine and smoked more crack together.

Paggioli testified that defendant told her that he wanted to have sex with her, and when she declined, he told her "he wanted some anyway, he was going to get it anyway." She then testified that defendant pushed her down onto his sofa bed, and she fought him, attempting to kick him in the groin and hitting him with a wine bottle. Defendant then took the wine bottle from Paggioli and struck her on the side of the head with it, cutting her. By this point, defendant was in his underwear straddling Paggioli. She yelled for help, and then defendant choked her. She testified, "He had his thumbs—I don't know what this is called right here, but he had his thumbs—he was just choking me. I couldn't—I couldn't breath, and I passed out." After she regained consciousness, she said that she felt that he was overwhelming her. She testified that he penetrated her with his penis and that he did not use a condom. Defendant had a "gold-colored knife" in his hand at some point during the attack. She testified that she was "[a]fraid of being killed," and "at that time, I figured my only way of getting out of there alive was to pretend that I enjoyed it." She

explained, "I couldn't fight him anymore. I knew he was stronger than me." When defendant finished, he gave her a basin of water and a washcloth and told Paggioli to wash up and leave. She washed her head and face and left, but forgot her purse.

William Ragland, a Deputy Sheriff with the Beaufort County Sheriff's Office, responded to a 911 call that Paggioli asked a neighbor to make. Paggioli told Deputy Ragland that defendant had hit her and raped her. Deputy Ragland retrieved Paggioli's purse from defendant's trailer. Defendant told Deputy Ragland that Paggioli was already bleeding when she showed up at his trailer and denied having sex with her.

Paggioli was taken to a hospital and a nurse collected a rape kit. Amanda Fox, a special agent with the Forensic Biology Unit of the State Bureau of Investigation (SBI) Crime Lab testified that the DNA from Paggioli's rape kit was consistent with defendant's DNA. A computational biologist testified that it was 35 trillion times more likely that the DNA matched defendant than any other person.

Photographs of Paggioli taken on 14 June 2005 and 16 June 2005 showed evidence of marks, abrasions, and bruises on Paggioli's neck. She testified that the marks were the result of being choked by defendant.

[1] Defendant first argues that Special Agent Fox's testimony constituted inadmissible hearsay and violated the Confrontation Clause. We disagree.

Fox had been a forensic DNA analyst for four and a half years at the time she testified. She was accepted by the court, without objection by defendant, as an expert in forensic biology. She testified in place of her supervisor, Chris Parker, who was out of state and unable to testify. Parker analyzed the DNA from Paggioli's rape kit, but Fox testified in his place as to the findings. She stated that she also performed "a technical review," meaning that she "looked at all the technical aspects of the case, [and] reviewed them, to determine whether or not they were correct." She confirmed that she could review Parker's work, check the technical aspects of it, and verify his findings without conducting a new analysis of the sample. Defendant objected to Fox's testimony and, after *voir dire*, the judge overruled the objection, saying "the objections raised apply more to the weight and credence and credibility that might be given to the testimony" than its admissibility.

Defendant relies on our opinion in *State v. Cao*, in which we held that a police officer reading into evidence a laboratory report identifying a substance as cocaine might have violated the defendant's Sixth Amendment right because the lab technician who prepared the report was not available for cross-examination. 175 N.C. App. 434, 436, 438, 440, 626 S.E.2d 301, 302, 304-05 (2006). Defendant argues that Fox's testimony is analogous to the police officer's in *Cao* because Fox did not conduct the DNA analysis herself and instead sought to introduce analysis performed by Parker, who was not available to testify. In *Cao*, we stated

> that laboratory reports or notes of a laboratory technician prepared for use in a criminal prosecution are nontestimonial business records only when the testing is mechanical, as with the Breathalyzer test, and the information contained in the documents are objective facts not involving opinions or conclusions drawn by the analyst. While cross-examination may not be necessary for blood alcohol concentrations, the same cannot be said for fiber or DNA analysis or ballistics comparisons, for example.

*Id.* at 440, 626 S.E.2d at 305. There was insufficient documentation of the lab procedures in *Cao* for this Court to determine whether the procedure was mechanical or not, and we ultimately held that even if the officer's testimony violated the defendant's Sixth Amendment right, admitting the testimony was harmless error. *Id.* at 440-41, 626 S.E.2d at 305.

We distinguish the case at hand from *Cao*. On cross-examination, Fox stated that DNA analysts use an instrument to get their data, but then the analysts review each area of data, and use their training and experience to determine whether they agree with the data generated by the instrument. The instrument that generates the data is a capillary electrophoresis system, which separates DNA based on size and charge. A computer program captures the images of the DNA and assigns a numerical value for particular areas. The computer generates a printout "similar to an EKG." She also stated on cross-examination that "[t]he only thing that [DNA analysts] enter into the system is the item number," which is used to track the samples. It appears that Parker conducted the electrophoresis and analyzed the results. However, Fox then conducted her own analysis of the electrophoresis results and reached the same conclusion that Parker did. Fox completed the subjective portion of the analysis and defendant had an opportunity, of which he availed himself, to cross-examine Fox about her analysis.

The facts in this case are similar to those in our opinion in *State v. Shelly*, in which an SBI senior chemist, Agent McClelland, offered expert testimony about gunshot residue. 176 N.C. App. 575, 589, 627 S.E.2d 287 at 298-99 (2006). Another agent had conducted the tests on the residue, but that agent retired before trial and was therefore unavailable to testify. *Id.*, 627 S.E.2d at 298. We noted that it is "well-settled law that an expert may base an opinion on tests performed by others in the field . . . ." *Id.* at 591, 627 S.E.2d at 299-300. Agent McClelland testified that he had "personally examined the printout from the equipment used by [the other agent] to conduct the testing," before comparing his findings with the other agent's and then signing off on the report. *Id.* at 590, 627 S.E.2d at 299. This Court held that Agent McClelland's testimony did not violate the defendant's Sixth Amendment right to confrontation. *Id.* at 591, 627 S.E.2d at 300.

Here, as in *Shelly*, the testifying expert personally examined and analyzed data collected by another agent before offering her opinion on the application of those data to the case. Defendant had an opportunity to cross-examine the expert. Unlike the officer in *Cao*, Special Agent Fox was qualified as an expert in the area of her testimony and had also personally analyzed the data on which her conclusions were founded. In *Cao*, we noted that "the key focus of the Confrontation Clause is ensuring the availability of cross-examination," *Cao*, 175 N.C. App. at 439, 626 S.E.2d at 304, and here such cross-examination was available. Accordingly, we hold that defendant's first argument is without merit.

[2] Defendant next argues that the trial court erred by denying defendant's motion to dismiss the charges of first-degree rape and assault by strangulation. Defendant timely moved for dismissal at the close of the State's evidence, and again at the close of all evidence. "[T]he trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion." *State v. Dexter*, 186 N.C. App. 587, 595, 651 S.E.2d 900, —— (2007) (citation and quotations omitted). When reviewing a denial of a motion to dismiss, "we consider the evidence in the light most favorable to the State, with all favorable inferences. We disregard defendant's evidence except to the extent it favors or clarifies the State's case." *Id.* at 595, 651 S.E.2d at —— (citation and quotations omitted). Defendant argues that the State failed to produce substantial evidence of each essential element of the offenses.

STATE v. LITTLE

[188 N.C. App. 152 (2008)]

The elements of first-degree rape are defined by N.C. Gen. Stat. § 14-27.2(a). The relevant elements[1] are (1) that a "person engages in vaginal intercourse," (2) "[w]ith another person by force and against the will of the other person," and (3) "[e]mploys or displays a dangerous or deadly weapon," *or* "[i]nflicts serious personal injury upon the victim . . . ." N.C. Gen. Stat. § 14-27.2(a) (2005). Because we view the evidence in the light most favorable to the State, we accept Paggioli's account of the attack. Paggioli testified that defendant entered her vagina with his penis; that he forced himself upon her; that she fought him and made known to him that she did not want to engage in sexual intercourse with him; that defendant hit her with a bottle, brandished a knife, and choked her to unconsciousness with his hands; and that Paggioli suffered bruises and cuts as a result of defendant's actions. Paggioli's testimony was corroborated by expert testimony that defendant's DNA was present in Paggioli's vagina at the time the rape kit was collected. Accordingly, we hold that the trial court did not err by denying defendant's motion to dismiss because the State presented sufficient evidence of each essential element of first-degree rape.

[3] The elements of assault by strangulation are defined by N.C. Gen. Stat. § 14-32.4(b): (1) an assault and (2) infliction of "physical injury by strangulation." N.C. Gen. Stat. § 14-32.4(b) (2005). "Strangulation" is not defined in the statute, but wrapping one's hands around another's throat and applying pressure until the person loses consciousness certainly falls well within the boundaries of the term. Paggioli testified that defendant attacked her and that she feared for her life, which is ample evidence of an assault. Paggioli testified that she received cuts and bruises on her neck as a result of being strangled. The cuts and bruises were confirmed by photographic evidence. Accordingly, we hold that the State presented sufficient evidence of each essential element of assault by strangulation and the trial court did not err by denying defendant's motion to dismiss.

Defendant received a trial free from error.

No error.

Judges McGEE and TYSON concur.

---

1. First-degree rape contains other elements when the victim is a child. N.C. Gen. Stat. § 14-27.2(a) (2005).